## REUBEN LAMB vs. DAY & PECK.

If an officer, by direction of a creditor, attach a chattel, and the creditor put it to use, with the assent of the officer, they are both trespassers *ab initio.* The rule of damages, in such case, is not, of course, the value of the chattels, but is the injury actually sustained.

WASHINGTON,<br>March,<br>1836.

It was agreed by the parties in the above suit, which was brought to the county court by appeal, that the following facts shall be received by the court as the evidence in the case.

The defendant, Ira Day, procured a writ of attachment in his favor against the said Lamb, and gave said writ to defendant Otis Peck, who was constable for the town of Barre, that said Peck, as constable as aforesaid, attached a certain mare, belonging to said Lamb on said Day's writ, and said Peck took said mare into his possession, and during the pendency of said Day's suit against said Lamb, and before final judgment in said Day's suit against said Lamb, Day took said mare out of the possession of said Peck, and put her to hard labor, that is, run her in the stage every day for eight weeks before the action was commenced by said Lamb against said Day & Peck, and this using of said mare, by said Day, was known to said Peck, and by said Peck's consent; all which laboring of said mare was without the consent or leave of said Lamb any way whatever ; said action of Lamb against said Day and Peck was commenced to recover pay for said mare on the 19th of January 1835, writ made returnable on the 31st January 1835, and from that time it was continued to the 21st of February 1835, at which time there was a trial on the merits of said action, which resulted in a judgment in favor of said Lamb against said Day and Peck, for damages eighty dollars and his cost, that afterwards, to wit, at the March Term of the supreme court in 1835, the said Day recovered a judgment in his said action against said Lamb and took out execution on which execution the said Peck, as constable, by virtue of said execution, publicly advertised and sold said mare thereon,

ᴸWASHINGTON,
*March,*
1836.
───────
Lamb
*vs.*
Day et al.

and applied the avails in part satisfaction of said execution. The said action, Lamb against Day and Peck is trespass. It is further agreed, that if the court are of opinion that the said plaintiff can recover in said action, they are to allow the plaintiff Lamb, for his damages $69,00, and if the court should be of opinion, that the plaintiff is not entitled to recover full value of said mare, than such damages as they should think proper. While the said Day was using said mare, the said Peck had knowledge of it, and took no measures to get her back into his possession, or prevent the said Day from using her as aforesaid.

*A. Kinsman attorney for plaintiff.*

*L. B. Peck attorney for defendant.*

On the trial upon the statement of facts, the defendants contended that trespass would not lie in the present case against either of the defendants, and that it could in no wise be supported against the said Day ; that if it could be supported against either defendant, but nominal damages only could be recovered, as the plaintiff had received the avails of the mare she having been sold and applied on the execution in favor of the said Day against the plaintiff, the amount of which execution was more than the value of said mare. But the court decided the law to be otherwise.

The defendant also offered to prove, that the horse at the time he was sold, was of greater value than when he was put to labor by the defendant, which evidence the court excluded, and rendered judgment for the plaintiff for $69,00 damages and costs ; to which several decisions of the court the defendants excepted.

*L. B. Peck for plaintiff.*—1. This action cannot be supported in its present form against either defendant. By the common law, if a beast distrained was worked, the distrainer becomes a trespasser *ab initio.* The common law, in this particular, has been altered by several acts of parliament, so that the only remedy for the injured party in all cases of distress, other than those made *damage feasant,* is by an action on the case. The rigor of the common law induced the alteration. Ought it then, to be adopted here, and to be applied to the case where property is attached ? No case, it is believed, can be found, where an officer has been held a trespasser for the moderate and proper use of beasts attached. When a pawn is of such a nature as to be a charge upon the pawnee, as a horse or cow, he may, in that case use the pawn in a moderate manner. He may ride the horse moderately, and milk the cow regularly, as if he were the owner ; and if he derives any

benefit from the pledge, he must apply those profits towards his
debt.—2 Kent's Com. 450. This rule is beneficial to both par-
ties, and therefore, has been adopted. Why should not the same
rule be adopted in cases of attachment? The interests of the
creditor and debtor requires its adoption. It is not unfrequently
the case that the expense of keeping property attached, such as
horses and cattle, nearly or quite consume the value of the prop-
erty before the suit is determined ; consequently it is lost to both
parties. If the rule was adopted that property of the latter des-
cription might be reasonably used in discharge of the expense of
keeping, or that the creditor should be accountable for such use,
and also for any injury the property might sustain, and for this he
clearly would be liable, it would greatly promote the interests of
all parties. The court are at liberty, as it strikes me, to adopt
this rule. They are under no obligation to apply to this case the
common law doctrine applicable to cases of distress, in England, if
our circumstances and situation do not require it. There is no
necessity for the recognition of this rule. It would be unjust in
its operation, if applied to a case like the one at bar. The plain-
tiff is not without his remedy. He may recover of Day, or the
officer, for the use of the mare ; and if she was injured, he has
his remedy by an action on the case.

2. Day, at all events, is not liable in this action. When he
took the mare out of the officer's possession, he trespassed upon
the officer. The plaintiff had neither the possession, nor the
right of possession. He certainly cannot sustain his action, for
the violation of the officer's possession ; and it is equally clear,
that it cannot be sustained against him, for the subsequent use, for
his act cannot be split up.—*Van Brunt et al.* vs. *Schenck*, 11
Johns. R. 377. It does not appear that Day was in any manner
connected with the attachment, otherwise than being plaintiff in
the suit. The court are not authorized from this fact to pre-
sume that he directed the officer to attach the mare. If this
fact appeared, it could not alter the case, as an attachment gives
the creditor no right to the possession of the property. It is in the
custody of the law, and in the possession of the officer. Neither
the creditor, nor any other person, save the officer, can be made
a tresspasser *ab initio* for using the property.

3. The plaintiff was entitled to nothing more than nominal dam-
ages. The mare having been sold and applied on the execution,
in favor of Day, he ought not to be permitted to recover the full
value here.—N. H. R. 71.—6 Mass. R. 20.—5 C. & P. 322.

WASHINGTON,
March,
1836.

Lamb
vs.
Day et al.

WASHINGTON,
March,
1836.

Lamb
vs.
Day et al.
If he holds the judgment rendered in the county court, he obtains two satisfactions. This is opposed to the law and justice of the case, as it might be difficult for Day to recover that portion of his judgment which was satisfied by the sale of the mare.

 *Kinsman* for *plaintiff.*—1. The plaintiff contends that the county court did not err in deciding that this action could be supported, and that the plaintiff was entitled to recover of the defendants the value of the property. The decisions have been uniform and all in support of this position since Lord Coke's time down to the present, that where the law, and not a private party, gives a licence, and the party abuses that licence, he becomes a trespasser *ab initio.* For where the law gives a general licence or authority, it is given conditionally, that it shall be used for that purpose, only for which the law allows it, and the law judges of and infers the original intention of the party from his subsequent acts.—*Gibs* vs. *Chase,* 10 Mass. R. 128–9.—*Oxly* vs. *Watts,* 1 D. & E, 12.—8 Coke, six Carpenters case.—Yelverton 96.—Bac. Abr., Trespass B.—1 Chit. Pl. 199 and 207.—5 Vt. R. 274.—1 H. Black. 13.— Com. Dig., Trespass C.—3 T. R. 262.—12 John. R. 408, *Adams* vs. *Freeman.*—Salk 122.—Bul. N. P. 81.—1 Swift 528.— Cro. J. 147, *Shaw* vs. ——.—2 Stark. Ev. 809.—2 Roll. Abr. 562.—8 Coke 146, B.—3 Willes 20.

 2. If the defendants were trespassers, although the first taking might be legal, still by the abuse of the authority, by which they took the property, they are in a legal point of view placed in the same situation as it relates to the trespass as though they took the property without any legal authority, and must be liable to the plaintiff for the value of it, and more especially Day who had no more right to use the horse than he would have had if it had never been attached, and by Day's suffering the horse to be sold after Lamb had commenced his suit and obtained judgment against Day and Peck for the value of the horse, cannot furnish any reason why the defendants should not pay the plaintiff the value of the property. Same authorities as cited before.

 3. The defendant Day being the creditor of Lamb, and procuring the mare to be attached on his debt, against Lamb, standing in that relation to the first taking if he afterwards used the mare himself, while she was in the costody of the law, he made himself a joint trespasser with Peck, and even a consenting by either of the defendants, that the mare might be used, though neither of them used her themselves, still both of them would be trespassers

by such consent.—11 John. R. 382.—1 Chit. Pl. in note 1, 199.—
1 Bin. 240.—*Hazard* vs. *Israel*, 11 John. R. 377.—2 Stark. Ev.
809.—Com. Dig., Trespass C. J.—13 John. R. 414.

4. The court did not err in rejecting the testimony offered by the defendants, to prove the horse in as good condition when sold on the execution as it was when first taken, for two reasons : First, *If the defendants had no right, by law, to use the horse while under an attachment, and by so doing were trespassers,* is was wholly immaterial whether the mare was in as good condition when first taken or not : Second, The parties made a case and agreed in writing, upon the facts, which were to be submitted to the court for their decision, and those facts all stated in writing. Therefore it was improper and illegal to admit any other testimony than that stated in the agreement, because it was taking the other party upon surprise, as he would be unprepared with any testimony to rebut any testimony which might be introduced by the defendants, in as much as the parties mutually agree on all the facts in writing, which were to be submitted to the court.

The opinion of the court was delivered by

Phelps, J.—There is no doubt, that the use of the horse by the defendant Peck, was a tortious act. The authority of a sheriff, with respect to property attached, extends only to the safe custody of it. He has no interest in it, except to retain it as security for the creditor: and whenever the use of it would impair its value, to permit such use would be to inflict an injury upon one or the other of the parties, without a corresponding benefit to either. There are indeed cases, where the use of a chattel might compensate for the expense of keeping it; and in such cases, there is a plausibility in permitting it. But as a general rule, it would be extremely unsafe and pernicious : and, inasmuch as there is no provision by law for adjusting such an account between the parties, we are not at liberty to countenance a proceeding so prolific of embarrassment and dificulty.

That the using the property by Peck, in this instance, would render him a trespasser *ab initio*, is a point too well settled to require discussion.

It is however insisted, that Day, the other defendant, cannot be made a trespasser by relation. This depends upon the question, whether he is to be considered as implicated in the original taking. If he is not, then certainly no subsequent tortious act of his could make him a trespasser in that respect. There is a strong presump-

WASHINGTON,
March,
1836.

Lamb
vs.
Day et al.

tion however in the outset, of his concurrence in the attachment made by Peck; and his subsequent adoption of that act, by taking the horse into his possession, and subsequently selling it on the execution, afford sufficient evidence of his participation. Being implicated in the original taking, the authority of the process was as necessary for his justification, as for that of Peck; and whatever would defeat that justification, would, of course, subject him to this action.

Had the subsequent tortious act been the act of the officer alone, without the assent or concurrence of Day, there would be good ground to argue, that he, Day, would not be affected by it. But as the act complained of, was the concurrent act of both the defendants, they are equally implicated. The justification being equally necessary for both, as to the original taking, and that justification being unavoidable, by reason of their joint act, the consequences must be the same as to both.

The case of *Van Brunt et al. vs. Schenck*, 11 John. R. 377, illustrates the distinction. Upon the first trial of that case, Schenck, not appearing to have participated in the original seizure, was held not to be a trespasser by relation. If a trespasser at all, it was only in the subsequent use of the vessel. But when, upon the second trial, his concurrence in the seizure appeared, he was held to be a trespasser *ab initio*, in the same manner as his deputy Van Buren, who made the seizure in fact.

In short, if Day had not been concerned in the first taking, he could be made a trespasser only by reason of the subsequent tortious use of the property, and in this view, the action might fail, for want of a right of possession in the plaintiff at the time. So if he had no agency in the after use of the animal, it might be questioned, whether he could be made a trespasser by relation by the act of the officer. But concurring, as he did, in both the acts, it is impossible to distinguish between him and his co-defendant.

The plaintiff's right of recovery being sustained, the next inquiry relates to the rule of damages.

Generally, the extent of the injury sustained is the criterion of damages. The value of the property taken, is not necessarily the *minimum* of damages. Whether it is so or not, in any case, depends upon the inquiry whether the chattel is wholly lost to the party. If not, then the rule of damages must conform to the actual injury, under the circumstances of the case. In this case, the horse is not lost to the party; but its value, at the time of the sale upon execution, has been applied in satisfaction of his debt; and

the extent of the injury depends upon the comparative value of the animal at different periods. If the value has been reduced by the transaction in question, the plaintiff has been injured in a comparative degree. But whether this injury be more or less, is a question for the consideration of the jury. It seems to have been supposed, that, inasmuch as the justification fails, none of the proceedings are proper to be considered in mitigation of damages. This is a mistaken view of the subject. The distinction between a full justification, and matter of mitigation, is obvious and palpable; and it is no answer to matter, which has a legitimate tendency to mitigate damages, that it falls short of a full justification.

Placing the liability of the defendant upon the footing of the original taking, as an act of trespass, still the ultimate disposition of the horse is material to the question of damages; and, as the property was applied in satisfaction of the plaintiff's debt, that circumstance serves to reduce the damages accordingly.

This view of the subject is sustained by the cases cited by the counsel.—See 5 Car. & P. 332.—6 Mass. R. 20.—1 N. H. R. 91. And is so obviously equitable in its result, in this case, that we hesitate not to adopt it.

The county court having given the full value of the horse, we consider their judgment erroneous. It is therefore reversed, and the cause remanded.