JESSE PAUL *v.* FRANCIS SLASON, WILLIAM PELKEY AND CHARLES H. SLASON.

An officer cannot be held liable as a trespasser *ab initio*, for using personal property attached by him, unless the property have been injured, or have been used by him for his own benefit, or for the benefit of some one other than the debtor.

Where an officer attached a horse, wagon and harness, and immediately put them to use in removing other personal property of the debtor, attached by him at the same time, and it appeared, that they were not thereby injured, it was held, that for such use he was not liable as a trespasser *ab initio*.

And where it appeared, that the officer, on the next day subsequent to the attachment, was seen driving the horse and wagon in the highway, and it did not appear, for what purpose he was using them, it was held, that the jury might infer, from the time and circumstances, that he was removing them for the purpose of securing them in a convenient place for keeping them, while subject to the attachment.

Where an invasion of a right is established, though no actual damage be shown, nominal damages will be given. This applies to cases, where the unlawful act might have an effect upon the right of the party, and be evidence in favor of the wrong doer, if the right ever came in question. So nominal damages will be given, when one wantonly invades another's rights for the purpose of injury, though no actual damage be done. But no damages will be given for a trespass to personal property, when no unlawful intent, or disturbance of a right, or possession, is shown, and when the property sustains no injury.

An officer, who had attached certain hay and grain, made use of a pitchfork, belonging to the debtor, in removing the same, and, when he had completed the removal, left it where he found it, and it was received by the debtor, and was in no way injured. *Held,* that the officer was not liable in trespass for such use of the pitchfork.

Application of the maxim, *de minimis lex non curat.*

The original record of a judgment rendered by the supreme court is competent evidence in the county court, for the purpose of proving such judgment.

The county court have no power, upon a trial, to permit a sheriff to amend his return upon an execution, which has been returned by him to the clerk's office, for the purpose of rendering such execution competent evidence in the case.

But the judgment of the county court will not be reversed, for such error, if it appear, that the result of the trial was in no way affected by it.

An officer cannot be made a trespasser, for attaching property upon *mesne* process, by reason of any irregularity in the proceedings of another officer in selling the property upon execution.

TRESPASS for taking two cords of wood, two baskets, two pitchforks, two horses, one harness, and one wagon. Plea, the general issue, with notice, that the defendant Charles H. Slason attached the property by virtue of a writ, which he was legally deputised to serve, in favor of one Langdon against the plaintiff, and that the other defendants aided him in so doing, at his request. Trial by jury, September Term, 1848,—HALL, J., presiding.

On trial it appeared, that on the twenty sixth day of September, 1844, the defendant Francis Slason commenced a suit in the name of Benjamin F. Langdon against the plaintiff, and that the defendant Charles H. Slason, who was legally deputized to serve the writ, which was returnable to the county court, attached the property in question, except one pitchfork, and that the defendant Pelkey assisted in removing the property. It also appeared, that on the same day Charles H. Slason and Pelkey made use of the horse, wagon and harness, part of the property attached, in removing grain and other property, which was attached at the same time, on the same writ, and upon the same farm, and continued to use them for this purpose through the day; and that on the next day Charles H. Slason was seen driving the same horse and wagon, with the harness, in the highway in the vicinity,—but upon what business did not appear. It also appeared, that the defendants took a pitchfork belonging to the plaintiff, and used it during the day, on which the attachment was made, in removing the grain &c.

The defendants offered in evidence the files and record of the supreme court, in the suit in favor of Langdon against the plaintiff, in which the property in question was attached, for the purpose of proving, that judgment was rendered therein in favor of Langdon;—to which evidence the plaintiff objected; but it was admitted by the court. The defendants then offered in evidence an execution, purporting to have been issued upon the judgment in the supreme court above mentioned, dated February 21, 1848;—to the admission of which the plaintiff objected, insisting, that an exemplified copy of the judgment should be produced, before the execution could be

given in evidence, and that the execution, and the issuing thereof, could be shown only by a certified copy of the record of the judgment ;—but the objection was overruled by the court.    The defendants then offered in evidence the return of one Edgerton, as sheriff, upon the said execution, to show that the wagon in question was sold thereon and the proceeds applied in payment of the debt.    To the admission of this evidence the plaintiff objected, upon the ground, that from the return it appeared, that the property was sold two days after the sheriff received the execution for service, as shown by his indorsement upon it.    The counsel for the defendants then suggested, that there was a mistake in the return, in stating the day of the sale, and moved the court, that the sheriff have leave to amend his return in that particular.    To this the plaintiff objected ; but the court permitted the sheriff to amend his return, so as to state the day of sale to have been one month later than stated originally in the return.    The defendants then offered in evidence the return, as amended ; to which the plaintiff objected,—but the objection was overruled by the court.    The defendants then offered in evidence the return of the sheriff upon the original writ in favor of Langdon against the plaintiff, showing an appraisal of the horse and some other property attached, and that the plaintiff had furnished security to the sheriff and received possession of the property. It appeared, that the money had not been paid on the security, and no application of the property had ever been made upon the execution by the sheriff, or by any other person.    The defendants also proved, that one McCune had executed a receipt to the sheriff for a portion of the property attached, and that the property, except the wagon which was sold upon the execution, went into the possession of the plaintiff.

The plaintiff requested the court to charge the jury,—1. That the defendants could not justify the taking of the property in question under the writ in favor of Langdon, if the property attached, or any portion thereof, were put to use by the officer who had attached it.    2. That property attached must be considered as in the custody of the law, and the attaching officer has no authority to put it to use ; and if, in this case, they found, that, upon the property being attached by Charles H. Slason, he put the horse, wagon and harness to use, and continued to use them, during the greater part

of the day, in removing the other property attached, he rendered himself a trespasser *ab initio,* and could not justify taking the property, or any part thereof, under the attachment. 3. That if the officer could justify the taking of the property under the attachment, if he so used any part of it, he could not justify the taking of the horse, wagon and harness so used; but, as to the property so used, the authority was rendered void by the abuse. 4. That the use of the horse, wagon and harness, on the next day after the attachment, was unjustifiable, and rendered the officer a trespasser *ab initio.* 5. That the application of the plaintiff to have the property appraised, under the statute, in order to regain the possession of it, and giving security to the sheriff, was not a waiver of the right of action against the defendant for the trespass; but that the plaintiff was entitled to recover the amount thus secured by him. 6. That if a portion of the property were delivered to the receiptor, the plaintiff was entitled to recover its value, unless it had come to his possession. 7. That if the jury found, that the defendants took the plaintiff's pitchfork and used it during the day, without right, he was entitled to recover its value, unless it were returned,—and that, if returned, he was entitled to recover nominal damages. 8. That the sale of the wagon and the application of its proceeds upon the execution in favor of Langdon could have no effect upon the amount of damages in this suit.

But the court charged the jury, that, from the testimony, the attachment and disposition of the property attached was a justification for the defendants, unless they had been guilty of such an abuse of the property, as to make them trespassers *ab initio;*—that whether the defendants were trespassers *ab initio* depended upon the character of the use of the property by them, after the attachment; —that the use of the horse, wagon and harness, in removing and securing other property of the plaintiff, attached the same day, on the same writ and on the same farm with the horse, wagon and harness,—the use being for a part of a day only,—would not necessarily be such an abuse of the officer's authority, as to make the defendants trespassers *ab initio;* but that if they found, either that such use of the property by the defendant was wanton, and with a design to injure the plaintiff, or that the property was injured by it, so as materially to diminish its value, the defendants would be trespassers

in the original taking and be liable in this action;—that whether the driving of the horse and wagon by the officer, the next day after the attachment, was an abuse of his authority depended upon the purpose and business, for which they were driven; that if the jury found, that the officer was using the horse and wagon for other purposes than that of removing and securing them in a convenient place for keeping, under the attachment, the defendants would be liable; but if for such a purpose, they would not be liable. In regard to damages, the court instructed the jury, that, the property having either been sold and applied on the execution, or delivered to the plaintiff on security furnished by him, the plaintiff would not be entitled to recover the full value of it; but that the measure of damages would be the amount, which the property had been diminished in value by the defendants' abuse of it. In regard to the pitchfork the court charged the jury, that if they believed, from the evidence, that the defendants took and carried it away, they should give the plaintiff its value; that if it was used and left upon the premises, so that the defendant received it again, and it was injured by the use, the plaintiff would be entitled to recover the amount of the injury; but that if they found, that it was merely used for a portion of a day in removing the plaintiff's property, there attached, and was left where it was found, so that the plaintiff had it again, and that it was not injured by the use, they were not bound to give the plaintiff damages for such use.

The jury returned a verdict for the defendants. Exceptions by plaintiff.

*M. G. Everts* and *Thrall & Smith*, for plaintiff, cited *Lamb* v. *Day*, 8 Vt. 407; 3 Stark. Ev. 1108; 1 Chit. Pl. 171; 5 Bac. Abr. 161; *Strong* v. *Hobbs*, 20 Vt. 185; *Hart* v. *Hyde*, 5 Vt. 328; *Orvis* v. *Isle La Mott*, 12 Vt. 195; *Fletcher* v. *Pratt*, 4 Vt. 182; and *Brainard* v. *Burton*, 5 Vt. 97.

*E. Edgerton*, for defendants, cited 2 Greenl. Ev. § 253; Ib. 283, § 276, n. 5; 1 Stark. Ev. 151, § 33; *Mickles et al.* v. *Haskin*, 11 Wend. 125; *Lamb* v. *Day*, 8 Vt. 407.

The opinion of the court was delivered by

POLAND, J. The first question, arising in this case, is in relation to the charge of the county court to the jury as to the use of the horse, wagon and harness by the defendants, in removing the other property of the plaintiff, which was attached at the same time. The jury were charged, that if they were only used in removing the other property, and were not injured or lessened in value thereby, such use would not make the defendants *trespassers ab initio.*

It was an early doctrine of the common law, that when a party was guilty of an abuse of authority given by the law, he became a trespasser *ab initio,* and lost the protection of the authority, under which he originally acted,—as, if beasts, taken *damage feasant,* or distrained for rent, were killed, or put to work, by the party taking them, he might be sued in trespass as for an original wrongful taking. This doctrine has fully obtained in this country, and was acted upon by this court in the case of *Lamb* v. *Day et al.,* 8 Vt. 407, where it was held, that the defendants, who had attached the plaintiff's mare (one being creditor and the other officer) and worked her for several weeks in running a line of stages, without the plaintiff's consent, became trespassers *ab initio.* The doctrine has, to our knowledge, never been extended to any case, except where there has been a clear, substantial violation of the plaintiff's rights, and of such a character as to show a wanton disregard of duty on the part of the defendants. Were the acts of the defendants, in using the horse, wagon and harness under the circumstances and for the purposes mentioned in this case, such an abuse of the property, and of the authority under which it was taken, as ought to deprive them of the benefit of its protection ?

It was the duty of the officer to remove the property, in order to make his attachment effectual, and the expense of such removal must be borne by the debtor ; and instead of the plaintiff being injured by the use of the property, he was really benefited by it. The doctrine, for which the plaintiff contends, goes the extent of saying, that any use of the property makes the officer a trespasser ;—so that if an officer attach a horse and wagon, and use the horse for the purpose of drawing away the wagon from the possession of the debtor, he becomes a tort feasor. We are wholly unable to satisfy ourselves, that the law has ever gone to so unreasonable an extent, or

has ever been applied to any case, except those where the property has been injured, or has been used by the officer for his own benefit, or for the benefit of some one other than the debtor. This was the rule laid down by the county court, and we are fully satisfied of its correctness.

2. The next question arises upon the charge to the jury in relation to the driving of the horse and wagon by the officer on the next day after the attachment. The case states, that the officer was seen driving the horse and wagon in the highway, but upon what business did not appear. The jury were charged, that if they found, that the officer was using the horse and wagon for other purposes, than that of removing and securing them in a place for conveniently keeping them, while under the attachment, the defendants would be liable,—otherwise not.

The officer, no doubt, had the right to drive the horse and wagon for the purpose suggested in the charge; but the plaintiff claims, that the legal presumption should be, in the absence of express proof as to the object and purpose of driving the horse and wagon, that it was for an unlawful purpose. But in our opinion this would be contrary to the ordinary rule of legal presumption in relation to all persons, and especially persons acting under legal authority. *Omnia præsumuntur rite acta* is a maxim, which is always applied to the conduct of persons acting under the authority of law. Although there was no direct evidence as to the object and purpose of driving the horse and wagon, the jury might well infer the object from the time, circumstances and direction of the driving; and we think it was properly left to them to determine. We think, it was upon the plaintiff to show the act of the officer to be unlawful; and if he had it left to the jury to decide, even without any evidence to prove it, we do not see, that he has any ground of complaint.

3. Another question is also raised upon the charge to the jury in relation to the use of the pitchfork by the defendants. Under the charge the jury must have found, that the pitchfork was used by the defendants only in moving the plaintiff's property, that it was left where they found it, that the plaintiff received it again, and that it was in no way or manner injured. They were told by the court, that if they found all these facts proved, they were not obliged to give the plaintiff any damages for the fork.

It is true, that, by the theory of the law, whenever an invasion of

a right is established, though no actual damage be shown, the law infers a damage to the owner of the property and gives nominal damages.   This goes upon the ground, either that some damage is the *probable* result of the defendant's act, or that his act would have effect to injure the other's *right*, and would be evidence in future in favor of the wrong doer.   This last applies more particularly to unlawful entries upon real property, and to disturbance of incorporeal rights, when the unlawful act might have an effect upon the *right* of the party and be evidence in favor of the wrong doer, if his right ever came in question.   In these cases an action may be supported, though there be no actual damage done,—because otherwise the party might lose his right.   So, too, whenever any one wantonly invades another's rights for the purpose of injury, an action will lie, though no actual damage be done; the law presumes damage, on account of the unlawful intent.   But it is believed, that no case can be found, where damages have been given for a trespass to personal property, when no unlawful intent, or disturbance of a right, or possession, is shown, and when not only all *probable*, but all *possible*, damage is expressly disproved.

The English courts have recently gone far towards breaking up the whole system of giving verdicts, when no actual injury has been done, unless there be some *right* in question, which it was important to the plaintiff to establish.   In the case of *Williams* v. *Mostyn*, 4 M. & W. 145, where case was brought for the voluntary escape of one Langford, taken on *mesne* process, and it was admitted, that the plaintiff had sustained no actual damage, or delay, the defendant having returned to the custody of the plaintiff, a verdict was found for the plaintiff for nominal damages.   But, on motion, the court directed a nonsuit to be entered, saying that there had been no damage in fact or in law.   So in a suit brought by the owner of a house against a lessee, for opening a door without leave, the premises not being in any way weakened, or injured, by the opening, the court refused to allow nominal damages, and remitted the case to the jury to say, whether the plaintiff's reversionary interest had in point of fact been prejudiced.   *Young* v. *Spencer*, 10 B. & C. 145, [21 E. C. L. 47.]   Mr. Broome, in his recent work on Legal Maxims, lays down the law in the following language,—" Farther, there are some injuries of so small and little consideration in the law, that no action will lie for them ; for instance, in respect to the payment

of tithes, the principle which may be extracted from the cases appears to be, that for small quantities of corn, involuntarily left in the process of raking, tithe shall not be payable, unless there be any particular fraud, or intention to deprive the parson of his full right."

If any farther authority is deemed necessary, in support of the ruling of the county court on this point, we have only to refer to that ancient and well established maxim,—*de minimis non curat lex*,—which seems peculiarly applicable in this case, and would alone have been ample authority upon this part of the case ; for we fully agree with Mr. Sedgwick, that the law should hold out no inducement to useless or vindictive litigation. Sedgwick on Dam. 62. This disposes of all the questions raised upon the charge.

4. The remaining questions in the case arise upon the admission of the original files and record of the case *Langdon* v. *Paul.* The plaintiff objected to the introduction of the original record, and claimed, that the judgment could only be proved by an exemplified copy of the record. But we think the objection not well founded. If the clerk of the supreme court were willing to bring the original record into court, we think it might well be used. He probably could not be compelled to do so, and might have required the party to procure a copy of the same ; but when the original record is brought into court, we think it would be very difficult to give any substantial reason, why it is not evidence of as high a character, as a copy of the same record would be. The practice of receiving original records as evidence has been universal, as we believe, in this state, and is often much more convenient than to procure copies. *Nye et al.* v. *Killam*, 18 Vt. 594.

In relation to the amendment of the execution by the officer, it is very clear, that the county court had no power to permit any such amendment ; but we cannot perceive, that the case was in any way affected by it. If the officer, who held the execution, was guilty of any irregularity in his proceedings in the sale of the wagon upon the execution, it could not have the effect to make these defendants trespassers, who took the property rightfully, and were in no way responsible for the act of the sheriff, who had the execution.

We find no error in the proceedings of the county court, and their judgment is affirmed.