## NORMAN N. BARROWS *v.* WOOODMAN FASSETT.

*Principal and Agent. Impounding Cattle. Trespass. Trespasser ab initio. Rescue. Possession.*

The defendant, while at home on a visit to his father, impounded the plaintiff's cattle doing damage on his father's land, but with the approbation of his father and with the assistance of a boy sent by him for that purpose. The defendant and his father had previously consulted about the expediency of impounding said cattle. *Held,* that in impounding the cattle the defendant was acting in the capacity of a servant for his father, and is entitled to the same immunity as his father would have been in his place.

When a person is engaged in a lawful attempt to impound cattle he has the right to defend his possession of them for the purpose for which he has them in charge; and to the same extent that a sheriff has to defend the possession of property taken by him on legal process.

The defendant being impeded by the plaintiff in a lawful attempt to impound the plaintiff's cattle, used force in self-defence and in defence of his possession of the cattle. The defendant after maintaining his control of the cattle, instead of proceeding to impound them, turned them into the plaintiff's enclosure. *Held,* that the defendant, by this disposition of the cattle, did not become a trespasser *ab initio,* in respect to the force used in self-defence and in defence of his possession.

TRESPASS, for an assault and battery. The case was referred and the referees reported substantially as follows: That early in the Spring of 1860, a controversy had arisen between the plaintiff and Pliny Fassett, the defendant's father, respecting a division-fence between the pasture of the plaintiff and that of the said Pliny, the latter claiming that he had for several years built about fifteen rods of fence that belonged to the plaintiff to build; that this year the said Pliny neglected to build said fence, and that the plaintiff's cattle frequently passed through into said Pliny's pasture; that about the 25th of July, 1860, the defendant, a son of the said Pliney, who resided in Kentucky, came home to Montgomery on a visit to his father and others, and often saw the plaintiff's cattle in his father's said pasture and learned of the controversy between the plaintiff, and the defendant's father relative to the fence; that the defendant and his father consulted as to the expediency of impounding the plaintiff's cattle.

They also reported, that on the 11th day of August, 1860, the defendant at the village of Montgomery, remarked that the plaintiff had misused his, defendant's, father, and that he, the defendant, did not intend to have it go on any longer, and that the plaintiff needed a pounding; that the defendant then went to his father's dwelling and found the plaintiff's cattle had passed from the plaintiff's said pasture through the fence in dispute, and were doing damage on the said Pliny's pasture; the defendant by the approbation of said Pliny, undertook to drive the cattle to the pound; that the defendant cut a beach stick for a walking-cane and for driving the cattle—the stick was about four feet long and about one inch in diamater at the butt end, and about half an inch at the small end; that the said Pliny sent a small boy with the defendant to help drive the cattle; that they drove them into the road and then the boy left, and the defendant proceeded alone with the cattle towards the plaintiff's house; that a boy living with the plaintiff told him his cattle were going to the pound; that the plaintiff then went into the road and called his hired man to help drive the cattle back; that the plaintiff had a hickory walking-cane in his hand and the hired man had a club; that the defendant requested the plaintiff to stand aside and let the cattle pass—the plaintiff paid no attention to what the defendant said, and in spite of the defendant's efforts, the plaintiff and his hired man turned the cattle around and proceeded to drive them back towards the said pasture; that the defendant walked along ten or fifteen rods on the left hand side of the plaintiff, and during the time the defendant made use of several irritating and insulting expressions to the plaintiff, to which the plaintiff made no reply. As the parties came nearer together, the plaintiff pushed against the defendant with his left shoulder. The defendant then struck the plaintiff a blow across the left side of his head with his stick and knocked him down; and this is the trespass complained of by the plaintiff in his declaration. The cattle had then got several rods ahead and the defendant had the control of them again, but he concluded not to drive them to the pound, but put them into the plaintiff's pasture on the opposite side of the road from where he had taken them.

Barrows *v.* Fassett.

· The referees found that if the court should decide that the defendant's possession of the plaintiff's cattle was such that the defendant had a legal right to use force for the purpose of defending his possession to the extent that a sheriff has to protect his possession of property taken by him on legal process, then the blow inflicted upon the plaintiff by the defendant was the use of no greater force than was justifiable and necessary for the protection of his possession of the plaintiff's cattle, and in self-defence.

The Court, April Term, 1862, ALDIS, J., presiding, rendered judgment upon the report, *pro forma*, for the defendant,—exceptions by the plaintiff.

*Edson & Rand*, for the plaintiff.

The defendant was in no sense an officer. The statute gives the protection by giving a penalty for rescuing or hindering and impeding the retaking, and nothing more. G. S. 619, § 23. But the resistance to a legal officer is an indictable offence. G. S. 682, § 13 and 683, § 17.

· If the defendant had a legal right to forcibly retake the cattle from the plaintiff, which we deny, for the purpose of impounding them, if he does not impound them and follow strictly the statute requisites thereafter he makes himself a trespasser *ab initio*. *Smith* v. *Gates*, 21 Pick. 55 ; 13 Pick. 384 ; *Sutton* v. *Beach*, 2 Vt. 42 ; 13 Johns. 477 ; *Morse* v. *Reed*, 28 Me. 481 ; *Sherman* v. *Broman*, 13 Met. 407.

*Brigham & Waterman*, for the defendant.

Whether or not, under the circumstances, the cattle were subject to be impounded, the possession of the defendant was like that of an officer who takes property by virtue of process, and the act of the plaintiff in attempting a forcible rescue, was wholly unjustifiable and unlawful. The plaintiff's only remedy was an action at law. G. S. 617, § 4 ; *ib.*, 619, § 20 ; 1 Hill. on Torts, 196 *n. a. ; State* v. *Downer et al*, 8 Vt. 424 ; *Fuller* v. *Sears et al.*, 5 Vt. 527 ; *State* v *Buchanan et al.*, 17 Vt 573.

BARRETT, J.   Upon the case, and the points made by the except-
ing party in the argument, no question is made,nor is it claimed,but
that the cattle, at the time the defendant found and took control of
them in his father's lot, were lawfully impoundable.   So we
assume that they were, and start with the question, whether the
defendant was so acting for, and as the servant of his father, as
to be entitled to the same immunity as his father would have
been, if he had personally been doing, and had received at the
hands of the plaintiff just what the defendant did, in the transac-
tion which constitutes the alleged cause of action, and defence
thereto in this case.

We think that the facts stated in the report show and constitute
the relation of servant, with full warrant, on the part of the
defendant, to proceed in a lawful manner for and in behalf of his
father, to the impounding of the cattle.   This results from the
reported history of the matter of the trespasses of the cattle upon
the lands of the defendant's father, and of what transpired
between the defendant and his father in relation thereto, con-
summated by the act of the defendant in taking the cattle in
custody for the purpose, and starting to drive them to the pound
" with the approbation of the father, and with the assistance of
a boy sent by the father for that purpose."

The defendant then had the lawful custody of the cattle at the
time the plaintiff came out, and made the attempt to deprive
him of that custody by a forcible rescue.   The question then is,
whether the defendant had the right to defend his possession of
the cattle for the purpose for which he had taken them in charge.
Upon this point the application of common principles seems to
be decisive.

If his custody and possession were lawful, of course his right
to maintain it continued until he should accomplish the purpose
for which he had assumed and was exercising it ; and any de-
signed interference with it, or any attempt to wrest it from him
was wrongful, whether it was done by the owner of the cattle, or
by any other person.

It is not questioned indeed, that the defendant might, with a
reasonable degree of force, defend his possession, provided it was

a lawful possession. There is no need of discussing the subject of the official, or *quasi* official character in which a person may be regarded, when acting in the lawful attempt to impound cattle taken *damage feasant;* for it is the same principle that accords the right to a known officer of the law, who has possession by virtue of his office, to defend his possession, as to the owner of the property, viz : that he has, and is lawfully entitled to maintain his possession of the property. It is the *right* itself, and not the means or mode by which it is derived that gives immunity to the party having such possession.

But it is claimed that the plaintiff had accomplished a rescue of the cattle, and having so done, the only right left to the defendant was to proceed by suit or prosecution for such act of the plaintiff—that is ; having been forcibly deprived of the possession, he had no right to attempt by force to resume it.

We do not find occasion to discuss the subject of his rights and remedies in case a rescue had been fully consummated ; for, upon the case as shown by the report, we do not regard the defendant as having yielded his possession, or as having been deprived of it by the attempted rescue. It is true indeed, that the plaintiff, by superior force, had impeded the defendant in the process of impounding the cattle, and had got them headed the other way and was temporarily successful in driving them back. But the defendant kept along with the cattle, insisting on his lawful possession, and in the persevering endeavor to maintain it ; with what success the plaintiff had rather an impressive experience as the result of the contest.

It was in the attempt of the defendant to maintain his possession, that the act of force was committed, which constitutes the trespass for which this suit was brought. The only question then, in respect to the act itself, is, whether it involved an excess of force. The report shows that the plaintiff, in the process of attempting to dispossess the defendant of the cattle, committed an act of violence upon the defendant's person, and that the blow inflicted by the defendant was for the double purpose of defending his person from violence, and preventing the consummation of the attempted forcible rescue of the cattle. It also finds that,

if the defendant had the legal right to defend his possession by force to the same extent that a sheriff, or other law-officer has, then the defendant used no greater force than was justifiable and necessary for the protection of his possession and in self-defence.

By this measure of right, we understand the referees to mean, the right on the part of such officer personally, and by himself, to use force in defending his possession; and in this respect we think the extent of right is the same.

The defendant, therefore, did not subject himself to liability in this case, by reason of the manner, or amount of force with which he repelled the aggressions of the plaintiff.

But it is insisted that, because the defendant, after he had got the control of the cattle against the interference of the plaintiff, did not proceed to impound them, but instead thereof, turned them into another enclosure of the plaintiff, he became a trespasser *ab initio*, and cannot justify his acts in defence of his possession. All the cases cited upon this point were actions of trespass for the taking of the property, and the justification attempted was of the trespass in the taking of the property.

It was held in those cases that, if the party taking the property pursued a course with it, without warrantable cause, different from that prescribed by the law, he was to be regarded a trespasser *ab initio*, and of course could not invoke the law as furnishing the shield of right in the original taking.

We have no occasion to determine whether in like cases we should hold in the same manner as was held in those cases or not.

It is well understood that this doctrine of converting an act, which was lawful at the time it was done, into a trespass by relation, in consequence of some subsequent omission or impropriety, is a technical rule, and, when abstractly considered, seems quite difficult of comprehension upon any obvious ground of reason. In several of the cases cited its technical and arbitrary character, as well as the incomprehensibleness of the reason on which it stands, is strongly illustrated. Those cases stand in marked contrast in this respect to several cases in our own reports, in which the doctrine has been applied and

illustrated.   In *Paul* v. *Slason et al.*, 22 Vt. 231, it is said that,
" in *Lamb* v. *Day et al.*, 8 Vt. 407, it was held that the defend-
ants, who had attached the plaintiff's mare and worked her for
several weeks without the plaintiff's consent, became trespassers
*ab initio.*   The doctrine has, to our own knowledge, never been
extended to any case except where there has been a clear, sub-
stantial violation of the plaintiff's rights, and of such a character
as to show a wanton disregard of duty on the part of the
defendants."

In *Stoughton* v. *Mott*, 25 Vt. 668, Judge REDFIELD collates
and reviews the leading cases upon the subject of trespass *ab
initio.*   After citing the points and language of many English
and American cases, he says : " Cases of this general character,
all tending to support the same general proposition, that one will
not be made a trespasser *ab initio* except by doing some pos-
itive wrongful act, giving character to the original act, might be
multiplied almost indefinitely."   He then cites the language of
Littledale in *Shorland* v. *Govitt*, 11 E. C. L. R. 279, in regard
to this whole subject, as taking its chief origin from the *Six
Carpenter's Case,* viz : " whether there is much good sense in
that case, it is unnecessary to say ;" and adds, " we should
certainly not feel disposed to extend the doctrine beyond its pres-
ent somewhat circumscribed limits."

. In *Briggs* v. *Gleason*, 29 Vt. 78, the same view of the subject
is presented, and in that view the law was applied in that case.

In the light of these cases, we feel free from any hesitation in
holding that this doctrine cannot be invoked against the defence
in this suit.   Here was no abuse of the property, and nothing
indicating that, up to the time of regaining his control of the
cattle, the defendant had taken, or was holding them for any
other than the lawful purpose of impounding them.

But in another veiw, we think we should be extending the
application of the doctrine even beyond any of the cases cited
in the argument, if we should hold it applicable to the present
case.   At the time of the commission of the act complained of,
it was the lawful exertion of force in self defence, and in defence
of a lawful possession.   This act was not upon the property

itself, nor is this suit brought to enforce any right in reference to said property. It is brought for violence to the person of the plaintiff. The plaintiff does not, by his suit, assert any right in virtue of the course taken by the defendant with the cattle, after the violence was inflicted upon him; but invokes collaterally the aid of a technical rule, in an application, and for a purpose, beyond the scope and purpose hitherto assigned to it.

There is no sensible reason for the application of the rule to this case; and we think there is no line of decision which would either require or justify our giving it the application claimed.

If this were an action of trespass for the taking of the cattle, it would then present the question of the effect of the course ultimately taken with the cattle by the defendant, as rendering the original lawful taking an unlawful trespass, and would present that question substantially in the same category of facts, as it is presented in the cases cited by the counsel for the plaintiff.

But as this case counts upon a trespass to the person of the plaintiff, and not upon his cattle, the matter of the taking and holding possession of the cattle is collateral to, and does not constitute, nor is involved in, the cause of action. We think, therefore, that for the purposes of this suit, the respective rights and liabilities of the parties must stand upon the state of facts as they had transpired up to, and including the act which constitutes the trespass for which this suit was brought. This result seems consonant to the leading principle announced in the cases referred to in our own reports, and does not conflict with the decisions referred to in the reports of other states.

The judgment for the defendant is affirmed.