RUFUS HALL *v.* ALBERT W. RAY.

*Sheriff's Sale.   Trespasser ab initio.*

Where an officer sells property on execution at a different place from that named in the notice, without adjournment to such place or consent of the execution debtor, he becomes a trespasser *ab initio*, and liable in an action of trespass, which is the proper form, to the debtor, for the full value of the property, although the officer has paid over to the debtor the proceeds of the sale.

THIS was an action of trespass, wherein the plaintiff claimed to recover for one pair of ox-bows, three chains, one ox-sled, two plows, one ox-wagon, one ox yoke, one shot gun.

The defendant pleaded the general issue, and gave notice of a justification under a writ of execution in favor of one Stephen Boyd against the plaintiff.

The case was tried by the court, by consent of parties, at the December Term, 1867, PROUT, J., presiding.

The plaintiff proved his title to the property, and its value, and that the same was taken by the defendant.  It appeared that the plaintiff was a farmer residing in Searsburg ; that he owned a yoke of four years old stags, and that the property above specified was all that he had of the kind.

The defendant gave in evidence, a copy of the record of a judgment in favor of Stephen Boyd, against the plaintiff, showing that said Boyd, on the 23d day of February, 1867, recovered judgment against

the plaintiff for ninety-nine dollars damages, and five dollars and two cents costs.

Also a writ of execution issued upon said judgment, for said sums, dated February 23d, 1867, with the return of the defendant as deputy sheriff thereon, from which it appeared that the defendant levied said execution upon the several articles sued for, and subsequently sold them, and paid over the proceeds of the sale, after deducting the costs, to the execution creditor.

It appeared that all of the proceedings of the defendant were regular, except as follows : The defendant advertised by posting a notice on the front door of the plaintiff's shed, that he would sell the goods and chattels levied upon, at or near the plaintiff's dwelling-house. He in fact sold them at the dwelling-house of one D. B. Leray, a neighbor of the plaintiff, who lived about sixty rods from the place where said defendant posted said notice. The court found the fact that the place of advertising, and place of sale, were each a public place. It did not appear that said sale was adjourned to said Leray's, or that the plaintiff consented to the sale at that place.

The plaintiff claimed that the goods levied upon were exempt from attachment and execution, but the court held otherwise,—to which the plaintiff excepted.

The plaintiff also claimed, that the proceedings of the defendant in advertising and selling the property, as above detailed, were so far irregular as to make the defendant a trespasser, and liable in this action. The court so held and decided, *pro forma,* and rendered judgment for the plaintiff to recover the sum of seventy-nine dollars and seventy-five cents, and interest thereon from the 25th of March, 1867; that being the full value of the property taken by the defendant,—to which the defendant excepted.

*Chas. N. Davenport,* for the defendant.

*W. H. Follett,* for the plaintiff.

The opinion of the court was delivered by

BARRETT, J. The statute requires that, in case of the sale of prop-

erty on execution, there should be a notification posted up in some public place of the time and place of the proposed sale, and that the sale should be made at such time and place, subject to the right of the officer, for proper cause, to adjourn said sale to some other proper time and place. In the present case the property was not sold at the place named in the notice. In view of what is stated in the exceptions on the subject, this court is not at liberty to presume that the defendant adjourned the sale from that place to the one at which he sold the property. The county court were to find all the facts, whether shown by the evidence, or educed by legitimate presumption. Whether the sale was adjourned or not was a question of fact. The exceptions state that it did not appear that said sale was adjourned, or that the plaintiff consented to the sale at that place. The existence of one or the other of these facts was material, in order to warrant the defendant in selling the property at a different place from the one named in the notice. The exceptions also exclude the idea that the place where the sale was made came within the terms of the notice by which the place was designated, viz : " at or near the plaintiff's dwelling-house." " He in fact sold them at the dwelling-house of one D. B. Leray, a neighbor of the plaintiff, who lived about sixty rods from the place where the defendant posted said notice ;" thus putting the place where the property was sold in distinction from, and in contrast with, the place named in the notice. Indeed, it is not distinctly claimed in the argument that the sale was made at a place within the fair scope and meaning of the terms used in the notice. The defendant departed from the authority with which the law clothed him, in virtue of the execution which he held, in making the sale at the place where he did make it. It was only by that authority that he had any right to take, or hold, or sell, or apply the avails of the property. When he did the unlawful act of selling the property at that place, he lost the protection of that execution accorded to him by the law, and the act thereupon assumed the same legal character, and involved the same legal consequences, as if he had not held the execution. It was not a mere negligence in the discharge of incidental or implied duties growing out of his lawful custody of the property, nor a violation of merely *such* duties, nor a

mere *non-feasance* of express duties resting upon him. In this respect the case differs from that of *Lamb* v. *Day & Peck*, 8 Vt. 407, and of *Briggs* v. *Gleason*, 29 Vt. 78. He was proceeding to do an official act which the statute authorized him to do, and required him to do it in a manner specifically prescribed. Instead of doing it in that manner, he departed from the requirement of the statute and did it in direct violation of it. As said by WILLIAMS, Ch. J., in *Bond* v. *Wilder*, 16 Vt., 393, " as he conducted with the property in a manner different from what the law directs, he was a trespasser *ab initio*, and cannot protect himself under the execution." Being such trespasser, it follows of course that *trespass* would be a proper form of action whereby the plaintiff might assert and enforce his rights. The case cited of *Hale* v. *Miller*, 15 Vt., 211, in which REDFIELD, J., delivered the opinion, was an action of *trover* by the debtor, against the creditor in an execution, who had purchased some of the property sold by the officer on said execution, in which action the plaintiff claimed that the defendant got no title, for the reason that the officer committed an irregularity in the sale of the property. That case involved no question as to the liability of the officer, but only, whether, on the case as made, the defendant had title to the property as against the plaintiff. The reference to 1 Chit. Pl. 158 (old edition) does not apply to cases of this kind. And *Wheelock* v. *Archer*, 26 Vt., 380, seems not to involve any question as to the proper form of action in such cases. It is proper to bring to notice, in connection with the case of *Hale* v. *Miller*, that REDFIELD, Ch. J., said in *Briggs* v. *Gleason, supra*, " the officer being thus made a trespasser from the beginning is liable to trespass or trover."

The remaining question is, whether the plaintiff was entitled to the rule and measure of damages adopted by the court. The proceeds of the sale were applied on the execution on which the property had been taken and advertised for sale. It is claimed that, as the judgment debt was thereby *pro tanto* satisfied, the damages should be diminished to the same extent. The difficulty in the way of adopting this view arises from the fact that *the sale was illegal.* The defendant had no authority to sell and apply the property in the manner he did. In order to entitle him to apply the property in payment

Hall v. Ray.

of that judgment, it was necessary for him to make a *legal sale* of it. He was not the plaintiff's agent. He was the agent and officer of the law, proceeding *in invitum* against the plaintiff's right to hold and dispose of his own. He could only affect and bind the plaintiff, in disposing and applying the proceeds of the property, by pursuing the coarse prescribed by *the law.* Except „so far as the law assumes to sell and apply one's property in payment of his debts, it is *his* right to exercise his own judgment, and act upon his own preferences, and adopt his own modes in that respect. The cases cited by the defendant's counsel are in harmony with this view. In *Lamb* v. *Day & Peck, supra,* the property was lawfully levied and sold on execution and the avails applied. The wrong-doing, for which the action was brought and maintained as for a trespass, *ab initio,* all occurred while the property was held under attachment on *mesne* process. Indeed, Lamb had brought his suit for the property and recovered a judgment, from which an appeal was taken and was pending, when Day obtained his judgment and execution on which the property was ultimately taken and sold, and the proceeds applied. The principle on this subject in *Irish* v. *Cloyes & Morse,* 8 Vt., 30, is the same as in *Lamb* v. *Day & Peck.* The principle and rule are well stated by WILLIAMS, Ch. J., in *Stewart* v. *Martin,* 16 Vt., 397, " though an officer or any other person may take property wrongfully, yet, if it has been subsequently legally taken and sold on execution against the claimant, such sale will reduce the damages," &c. When Judge REDFIELD, in *Briggs* v. *Gleason,* says, " It is true that if he (the officer) has subsequently applied the property in payment of the debt, this will go in mitigation of damages," it must be taken in the light and sense of the idea expressed by Judge WILLIAMS, viz, that the property was *legally* taken and sold. In *Collins* v. *Perkins,* 31 Vt., 624, the right to mitigate the damages in trespass, where the officer had rendered himself liable *ab initio,* was put by Judge POLAND on the same ground. viz, that the plaintiff had " subsequently received back the property, or the same was *legally* disposed of for his benefit." It is true that, since the case of *Turner* v. *Lowry,* 2 Aik. Rep. 72, and of *Hall et al* v. *Brooks,* 8 Vt., 485, the rule of damages in cases of *negligence* by officers has undergone considerable change

in their favor; but, in cases where they have been held to subject themselves as trespassers *ab initio*, we understand the law, both as to liability and as to measure of damages, has undergone no change. The case of *Paul* v. *Slason et al*, 22 Vt., 231, constitutes no exception. In that case the question was, whether the defendants were liable as trespassers *ab initio* for the alleged misuse of the property while held under the attachment on *mesne* process, and before judgment and execution in the suit on which it had been attached, and not as to any alleged illegality in the service of process, or the levy and sale of the property on execution.

On the whole we think the court was correct in the rule and measure of damages adopted. What may be the defendant's posture and rights, and remedy, growing out of this recovery against him, in view of the payment that he made on the execution which he levied on the property, is not now before us for decision.

In pursuance of the views above expressed the judgment would be affirmed, irrespective of the questions made as to the exemption of the property under the statute. We refrain from the discussion of those questions on this occasion.

The judgment is affirmed.