## EVARTS *v.* BURGESS.

*Officer.* *Trespasser* ab initio. *Damages.*

If an officer advertises property other than hay, grain, &c., taken in execution, at one place, for sale at another place, and sells it accordingly, he thereby becomes a trespasser *ab initio*, and liable for the full value of the property, notwithstanding he applies the proceeds of the sale upon the execution.

TRESPASS, with a count in trover, for eight cows, two horses, three harnesses, one plow, and one wagon, taken and sold by the defendant as constable, on an execution against the plaintiff and one J. T. Evarts. Plea, the general issue, and notice of justification under process. Trial by the court, September Term, 1875, ROYCE, J., presiding.

It appeared that the plaintiff owned all of said property when taken by the defendant, except the cows, which he held as lessee of one Jonathan T. Evarts under a lease for ten years, wherein he stipulated to keep them in good condition, and return them at the end of the term. The defendant advertised at the hotel in Georgia Center, that a certain portion of said property would be sold at the dwelling-house of one Watson, and a certain other portion thereof at the dwelling-house of the plaintiff; and he sold the same accordingly, and applied the proceeds upon the execution. It appeared that each of said dwelling-houses were more than a mile and a half from said hotel, but no question was made but that they were public places. The question was whether the defendant could advertise the property at one place and sell it at another.

The court allowed the defendant to amend his return on trial, but that part of the case need not be stated.

The court found the value of said property, including the cows, to be $477.25, and rendered judgment, *pro forma*, for the defendant; to which the plaintiff excepted.

*M. Buck*, for the plaintiff.

The defendant sold the property at the places named in his notification, and by disregarding the statute, became a trespasser

*ab initio.* Gen. Sts. c. 47, s. 4 ; *Rand* v. *Wilder,* 16 Vt. 393 ; *Drake* v. *Mooney,* 31 Vt. 617 ; *Collins* v. *Perkins,* 31 Vt. 624 ; *Hall* v. *Ray,* 40 Vt. 576.

For the rule of damages, see *Hall* v. *Ray, supra* ; *Hickok* v. *Buck,* 22 Vt. 149. The sale having been illegally made, the fact that the avails were applied on the execution cannot mitigate the damages. *Hall* v. *Ray, supra.*

The plaintiff must recover full value for the cows, he being liable to account to the general owner. *Ullman* v. *Barnard,* 7 Gray, 554 ; *White* v. *Webb,* 15 Conn. 502 ; *Crane* v. *Bailey,* 10 Gray, 87 ; *Pomroy* v. *Smith,* 17 Pick. 85.

*Edson, Rand & Edson,* for the defendant.

We claim the property is not required to be sold at the place where advertised. To ascertain the sense of the word *such,* in s. 4, c. 47, Gen. Sts., resort may be had to the meaning given when the act was passed. The only definition given in the dictionaries of that time is, "of a like kind." Perry's Dict. of 1775. From June 1797 to 1839, the acts were as follows : " The officer shall forthwith advertise the same, setting up a notification, wherein he shall enumerate the goods and chattels so levied upon, on the *sign-post* of the town in which they were taken, (or at such other place as may be agreed upon by the officer and debtor), and that the goods and chattels so posted are to be sold at public vendue at the said sign-post ; or at such other public place as the officer shall think most advantageous to the debtor." Laws 1798, 144 ; Ib. 1808, 320 ; Slade's Sts. 209 ; Rev. Sts. 239. The most that the present act would seem to require is, that such property shall be advertised at a public place and sold at a like public place.

If an officer, in the absence of any statutory regulation, has power to adjourn the sale to another place, we can see no reason why he may not advertise at one public place and sell at another public place. The construction we claim has been so long and universally recognized and acted upon, that it ought not to be questioned. No evils can result from this construction ; while to hold differently, would unsettle the title to a vast amount of

property, open the flood-gates of litigation, and entail ruin on many officers and other parties who are not able to protect themselves by the Statute of Limitations.

The opinion of the court was delivered by

WHEELER, J. There are some reasons why authority to sheriffs and constables to post notices at one public place for the sale of personal property at another place, although it should be public and in the same town, might tend to make such sales to some extent secret and underhanded, when they should be to the fullest extent open and fair. In many and probably most of the towns in the state, there are public places at which the notices might be posted and others where the sales might be had, so far distant from each other that none of the persons who would observe the notices would be likely to attend the sales unless the amount of property to be sold should make them very important. From the early history of the state to the statutes of 1839, the officer in such sales was required to post the notice on the sign-post, or at such other place as might be agreed upon by him and the debtor; but he had a discretion left him to have the sale there or at such other public place, as he might think most advantageous to the debtor. At the time of the statutes of 1839, the sign-post had become less prominent as a public place in towns, and the legislature removed the requirement that the notices should in all cases be posted on it unless the officer and debtor should agree otherwise, and after that, only required that the notices should be posted at *some* public place in the town where the goods were taken, but required further, that they should be sold *at such public place*. The ordinary and apparently plain import of the language then made use of by the legislature, would seem to require that the sale was to be had at the place where the notice was posted. The intention to take away the discretion which officers had before had as to the place of sale, manifests itself. Subsequent legislatures appear to have understood that this was the effect of the change, for after providing for the attachment of and levy upon bulky and ponderous articles by copy and description left in the town clerk's office, they provided for the sale of such

property without removal, by notice for the sale of it where kept, posted at a public place elsewhere. Laws of 1843, No.ˇ2. The practice of officers under the statutes since those of 1839, although not wholly uniform, has mostly been according to the understanding that the sale must be at the place where the notice is posted.

This question has several times been incidentally, but not so directly as to require a decision of it, before this court, and on such occasions the intimations of the court so far as reported and observed, have uniformly been to the same effect. *Drake* v. *Mooney*, 31 Vt. 617; *Collins* v. *Perkins*, 31 Vt. 624; *Hall* v. *Ray*, 40 Vt. 576. And now that the point is directly presented for decision, there seems to be no way but to hold that the statute requires the notice to be posted and the sale to be had at the same public place. This may seem to operate harshly in this case, but *ita lex scripta est.* The sale having been had at a place where the defendant was not authorized by law to have it, his proceedings, which were *in invitum,* do not justify him in the taking and disposition of the property, and he is left a trespasser *ab initio,* and, as has not been questioned in argument, liable for full damages. *Hall* v. *Ray, supra.* This disposition of the case makes it unnecessary to pass upon the effect of the amendment to the officer's return on the execution, allowed by the County Court.

Judgment reversed, and judgment for the plaintiff for the value of the property found by the County Court, with interest from the time of that judgment.