## WILLIAM P. BRIGGS *v*. SAVEDRA W. TAYLOR.

*Attachment. Action. Officer. Non-joinder of Plaintiff. Abatement. Evidence. Deputy Sheriff. Estoppel. Principal and Agent.*

The general owner of property attached by his creditors may maintain a suit against the attaching officer for damage to the property attached through the officer's negligence, while the suit upon which the property is attached is still pending, and the attachment is still in force.

The rights of the creditor and officer in such cases may be protected by an order of court for the stay of execution, or the payment of the damages into court, to await the determination of the original suit in which the attachment was made.

In an action against an officer for negligence in keeping property attached by him, brought by one of the owners, the non-joinder of a co-tenant of the property as plaintiff cannot be used to defeat the action except by plea in abatement. Upon trial the objection can only avail in apportioning or severing the damages.

The expression in an officer's return describing the property attached, "all the hay and grain in the barns and in stacks" on a particular farm, *held* to embrace grain in the straw.

If it is necessary for the preservation of grain in the straw which has been attached, that it be threshed, it is the duty of the attaching officer to thresh it.

The record of the appointment of a deputy sheriff, made in the county clerk's office, is admissible evidence to prove his appointment, without proving the loss of the original deputation. So, in connection with such record evidence, parol evidence that one acted as sheriff, or deputy sheriff, is admissible to prove he was such.

The fact that the owner of property attached often met the attaching officer and knew how he was keeping the property and did not complain, is not competent evidence against his claim to recover of the officer for his negligence in keeping the property.

Evidence is admissible for the purpose of affecting the credibility of a witness, to prove that he has testified to material facts upon a second trial which he omitted to relate upon the first.

A hired man upon a farm who has had authority to lend the tools and personal property used on the farm, does not retain that authority, even so far as relates to his master, after the tools and property have been attached, and while they remain in the custody of the officer.

Briggs *v.* Taylor.

THIS was an action on the case against the defendant, as sheriff of Chittenden county, for the neglect of his deputy, Rolla Gleason, in the care of property attached by him on process against the plaintiff, and was tried by the jury on the general issue at the September Term, 1860, KELLOGG, J., presiding.

The plaintiff offered in evidence two writs of attachment against the plaintiff, one in favor of the National Life Insurance Company, and the other in favor of Joseph Reed, returnable to Washington county court, at its November Term, 1851. These writs were both served by Gleason, as deputy sheriff, September 22nd, 1851, and the officer's returns thereon endorsed stated that he "attached as the property of said Briggs all the hay and grain in the barns and in stacks on the farm of William P. Briggs, in Richmond &c., and left in the town clerk's office in Richmond, a true and attested copy of the original writ with a list of the property attached, with this my return thereon endorsed. I also attached, as the property of the defendant, Briggs, 19 two years old cattle, 4 yearlings, 31 cows, 3 yokes of oxen, 1 yoke of stags, an old carriage, two sets of double harnesses, 1 single harness, 1 cultivator, 1 plow, 1 straw cutter, 1 pair of large wheels, axletree and tongue, 1200 or 1500 pounds of cheese, and 1 pair of traverse sleds."

The plaintiff further proved that the suits in which these attachments were made, were prosecuted to final judgment in favor of the plaintiffs therein, which was rendered at the March Term, 1862. The present action was brought, however, before the rendition of these judgments. These judgments were shown to have been satisfied by the sale on execution of the property attached as above described, and by levy on the plaintiff's real estate.

To prove the official character of the defendant, and of Gleason, the plaintiff offered the record in the office of the county clerk of Chittenden county, of the recognizance of the defendant, as sheriff, taken on the 4th of December, 1850, before the first assistant judge of the county court, together with parol testimony, that the defendant acted as sheriff of Chittenden county, during the year following the 1st of December, 1850.

Briggs *v.* Taylor.

Also, a like record of the appointment by the defendant of Gleason, as deputy sheriff of said county, dated December 6th, 1850, and of the official oath of said Gleason, as such deputy, with parol testimony that Gleason in fact acted as such deputy during the year from 6th December, 1850, to December, 1851.

To the admission of these records and evidence the defendant objected, but the court overruled the objections and received the testimony, and the parol evidence so received, tended to show that the defendant and Gleason acted as sheriff and deputy sheriff, respectively, as stated in the plaintiff's offer. No other testimony on this point was introduced.

It appeared by the testimony on both sides that the grain, consisting of a quantity of oats, rye and wheat, was, at the time of the service of the two writs above described, in the straw, in barns and a shed on the plaintiff's home farm in Richmond, and so remained until after the commencement of this suit, no possession thereof having been taken by Gleason, except such as resulted from the leaving of copies in the town clerk's office, as stated in said returns on said writs, and that the old carriage, large wheels and traverse sleds were removed by Gleason, or under his direction, and permitted to remain out doors, and without shelter, from the time of the attachment until after the commencement of this suit, and until they were sold in April following.

The plaintiff's testimony tended to show (and on this point no testimony was introduced on the part of the defendant,) that in the spring of 1851, the plaintiff and one Griffin entered into a contract, not under seal, by which the plaintiff was to let to Griffin, for one year from the 1st of April, 1851, "at the halves," a portion of the plaintiff's said farm, together with thirty-one cows, a yoke of oxen, and sundry other things necessary for the carrying on of the farm, and the manufacture of butter and cheese, the plaintiff reserving to himself a portion of the farm, including one dwelling house, a horse barn, and the right to use such undivided portion of the buildings leased to Griffin, as the plaintiff might have occasion to use for the storage of his own crops, &c., during Griffin's term; that Griffin, pursuant to said contract, moved on to the farm and took possession of the

property so leased, in the spring of 1851, and remained in pos-session thereof, (except that portion which was attached and removed on the 22nd of September, 1851,) until the winter of 1851–2 ; that a portion of the oats attached was raised by Griffin under the contract aforesaid, and on the 22nd of Septem-ber were undivided and in the barn occupied by Griffin under said contract; and that the cheese, which was attached, was manufactured by said Griffin, under said contract, and was in his possession, and undivided when attached.

The plaintiff claimed to recover for injuries sustained by the cattle, the grain, the cheese, harnesses, old carriage, large wheels, and traverse sleds, from the alleged neglect and want of care of Gleason, in respect to these several articles while in his hands, after the 22nd of September, and before the commencement of this suit. The plaintiff's testimony tended to prove, that the cattle suffered damage, and were reduced in flesh and value, for want of suitable care and food, while in Gleason's possession ; that the cheese was not properly taken care of ; that the grain by reason of Gleason's want of care in neglecting to have it threshed, was greatly eaten and damaged by vermin ; and that the harnesses, traverse sleds, old carriage, and large wheels, were injured to some extent, by exposure to the weather. The defendant's testimony tended to prove the contrary. The defendant offered to show, that the plaintiff, although all along aware of the manner in which the large wheels, attached by Gleason, were being kept and taken care of by Gleason, and although frequently, while the property was in Gleason's hands under the attachment, having conversations with Gleason relative to the property, he never made any complaints whatever of the manner in which Gleason took care of them. To this evidence the plaintiff objected, and it was excluded by the court.

The testimony on the part of the plaintiff tended to show, that late in the fall of 1851, or early in the following winter, one Freeman, to whose premises the traverse sleds, and some of the other property, which was attached on said 22nd of September, was taken by Gleason after the attachment, applied to Gleason for leave to use the sleds; that Gleason told Freeman that he might use them if Briggs (the plaintiff) was willing, and that

thereupon Freeman applied to Briggs, or to one Marshall for permission to use them, and having obtained such permission, either from Briggs or from Marshall, proceeded to use the sleds during a portion of that winter.

The testimony on the part of the plaintiff further tended to show, that Marshall had been in the employment of Briggs, on his farm in Richmond, for some two years previous to the lease to Griffin, of a part of the farm for one year from 1st April, 1851, and continued to live with Briggs in his house on that part of the farm not leased to Griffin, until after the commencement of this suit, being during all that time Briggs' "foremost hired man;" that Marshall was in the habit while working for Briggs, of occasionally lending plows, hoes and other farming implements belonging to Briggs, and kept on the farm. The defendant's testimony tended to show, that Briggs knew in the time of it, that Freeman was using these sleds, and made no objection thereto.

The plaintiff's testimony further tended to show, that the carriage, when attached, was an old one, but not past use, and that it was of some value, either for use or sale, and that the large wheels were also of some value beyond their irons. The testimony on the part of the defendant tended to prove, that neither the carriage nor the large wheels, were, when attached, of any value, except for the irons which were upon them.

The defendant also objected to the testimony offered by the plaintiff, to show the damage done by vermin to the grain, owned in common by the plaintiff and Griffin, but the court overruled the objection, and received the testimony.

The uncontroverted testimony on the part of the plaintiff tended to show, that after the large wheels were attached, they were removed from under the plaintiff's shed into the highway, a few rods from where they were when attached, and there left until their sale in April, 1852, the place where they were so left being in the highway, and that the plaintiff owned the land adjoining to each side of said highway.

Gleason having been called as a witness for the defence, and having testified that the wheat, from an injury to which the

plaintiff claimed to recover in this action, was injured by the weevil. The plaintiff (having made the proper preliminary examination of Gleason,) offered to show, that at a former trial of this case Gleason was a witness for the defence, and was examined in regard to the condition of the wheat at the time it was sold by him, and that he did not then mention anything about the wheat being injured by the weevil. To this evidence the defendant objected, but the objection was overruled, and the testimony offered was received.

After the plaintiff's testimony was closed, the defendant requested the court to order a verdict for. the defendant, upon the ground that as the suits mentioned in the declaration, and in which the plaintiff claimed the property in question in this case were attached, were pending at the time of the commencement of this suit, the plaintiff had not at that time any cause for action ; but the court refused to so order.

The defendant requested the court to charge the jury, among other things, that there was no legal testimony in the case tending to show that the defendant was sheriff, or that Gleason was a deputy sheriff, at the time of the attachment of the property in question ;

That the returns on the National Life Insurance Company and Reed writs did not show a legal attachment of the grain, and that consequently the defendant was not liable for any injury thereto ;

That it was neither the duty, nor the right of Gleason to have had the grain threshed, and that if the alleged damage to the grain resulted wholly from Gleason's omission to have it threshed, the plaintiff could not recover ;

That as the cheese and a portion of the grain was owned jointly by the plaintiff and Griffin, the plaintiff could not maintain an action in his own sole name, for any injuries thereto, but that Griffin ought to have been joined as co-plaintiff, in respect to this part of the property ;

That as to the old carriage and large wheels, if the jury should find, as the defendant's testimony tended to show, that they were of no practical value, except for their irons ; and that

they received no detriment, as an article of sale, from their exposure to the weather, the plaintiff could not recover as to them.

But the court declined to charge the jury as so requested, and (among other things not excepted to,) instructed them as follows :

That if the parol testimony tending to prove that the defendant acted as sheriff, and Gleason as deputy sheriff, during the year 1851, was credited by the jury, this, together with the records introduced by the plaintiff to show the official character of the defendant, and of Gleason as aforesaid, would require the jury to find that the defendant and Gleason were such officers respectively ;

That the returns on the Insurance Company and Reed writs, in connection with the other evidence above mentioned, were sufficient to show such an attachment by Gleason, as the defendant's deputy, of all the property in question in this case, as would render the defendant responsible for the proper care of the property ;

That as to the old carriage, large wheels, and sleds, if the jury should find that these, or either of them, were left by Gleason out of doors and exposed to the weather, from the time when they were attached, to the 29th of February, 1852, when this suit was commenced, this was such negligence, as would render the defendant liable in this action, and the plaintiff would be entitled to recover some damage therefor, unless the jury should find the articles were past use, and had no value either for use or sale, when attached, in which case the plaintiff could not recover as to such articles ;

That it was the duty of Gleason to exercise such care and diligence in respect to the keeping of the cattle, and providing them with food, as the average of careful and prudent men exercise with such property of their own ;

That if, for the preservation and prudent management of the grain, it was necessary that it should have been threshed, it was Gleason's duty to have had it done, and if, by reason of such neglect to have the grain threshed, it suffered after it was attached, and the injury and destruction complained of accrued

after it was attached, and previous to the commencement of this suit, the plaintiff was entitled to recover therefor ;

That if the cattle, cheese, or grain, sustained any deterioration, waste, or injury while in Gleason's hands, under the attachment, the defendant would be *prima facie* liable to the plaintiff, on this action, for the amount of the loss resulting from such deterioration, waste, or injury; and in that case the burden would be on the defendant, to prove that such injury did not result from any neglect or want of proper care on the part of Gleason.

As to Marshall's authority to lend the traverse sleds to Freeman, the jury were told that there was no testimony in the case tending to show any authority in Marshall to lend the plaintiff's property, which was not on the farm, but that if the plaintiff knew of the use of the sleds by Freeman, and assented to it, he could not recover for any injury to them while in the possession of Freeman, nor until after they had been returned to the possession of Gleason.

In regard to other questions arising in the case, the court gave such instructions to the jury as the case required ; to which no exceptions were taken.

To all which rulings and decisions of the court, to the refusal of the court to charge as requested, and to the charge as above detailed, the defendant excepted.

*Hard & French* and *George F. Edmunds*, for the defendant.

*Roberts & Chittenden*, for the plaintiff.

ALDIS, J.   The first question and the important one is, can the plaintiff, being the general owner of property attached by one of his creditors, maintain a suit against the attaching officer for damage done to property attached through the officer's negligence, while the suit upon which the property is attached is still pending, and the attachment is still in force.

The debtor is the general owner of the property ; the attaching creditor has a contingent lien by his attachment—a lien which may be defeated by the debtor's paying the debt, or replevying the property, or by the creditor's failing in the suit,

or by his collecting his execution of the debtor in money, or levying it upon other property. An injury to the property may happen through the officer's negligence in not properly taking care of it, and must be an injury to the debtor in any event. To the creditor it may be an injury if the debtor has no other property from which the debt can be collected, and the injury to the property attached depreciates its value below the amount of the debt; otherwise it is no injury to the creditor. Hence the creditor can never tell whether it is, or is not, an injury to him till his suit is perfected by judgment, the issuing of an execution, and its levy on the property attached. Then and not till then can he ascertain whether the officer's negligence has caused him damage; and hence until then he can not sue the officer for such damage. This point is conceded upon the argument by the defendant's counsel as we understand. It is difficult to see how it can be otherwise.

But while it is thus uncertain whether the officer's neglect will work an injury to the creditor, it is certain that it must be an injury to the debtor; for whether the property is restored to him or is sold to pay his debts the loss finally falls on him. Even if the loss affects the creditor by preventing him from collecting his whole debt, it falls also upon the debtor, for he remains still indebted for the amount which would have been paid if the property had not been diminished in value.

Thus the debtor's loss is absolute and immediate—the creditor's uncertain and remote.

It seems highly unreasonable to say that the officer may by his negligence depreciate or destroy the value of the property attached, and yet not be liable to be sued therefor. He should be liable to somebody. The interests of all the parties require that his liability for neglect should be ascertained while the wrong is recent, the proof accessible and not forgotten or lost in the lapse of time. So the officer may become bankrupt. To put off a suit till the rights of the attaching creditor are settled by litigation, or as it may be till successive suits and attachments are all ended, would not unfrequently work a delay fatal to any recovery for the wrong. When to these considerations we add the further suggestion that the debtor is the real owner of the

property and the real and absolute loser by the misconduct of the officer, it seems to us very plain that he should be allowed to bring the suit, unless a recovery by him of the damages would withdraw them necessarily from the lien of the creditor. But this by no means follows. In a suit brought by the debtor for such damage the officer, who is sued, or the creditor might show to the court that the damages were recoverable for property subject to a pending attachment, and the court would thereupon order a stay of execution till the creditor's rights were determined—or might require the money to be paid to the clerk to be held for the benefit of the creditor. Where debts are subject to the trustee process and suits by the creditor have been begun, and other suits have also been instituted to trustee such debts, it is a frequent practice of our courts to stay the rendering of judgment, or the issuing of execution in such suits, until the rights of all interested can be protected. The exercise of the same power for a similar beneficial end would preserve the damages, which the owner of property attached might recover of the officer for negligence, to be ultimately awarded to the party who should be found in the end entitled to the same.

2. It is objected to the maintenance of this suit that Griffin was a co-tenant with the plaintiff of a part of the property sued for, and that the plaintiff can not maintain this suit alone, but should have joined Griffin.

In suits *ex delicto* this objection should be pleaded in abatement to defeat the action. Upon trial, if not so pleaded, the objection can only avail in apportioning or severing the damages; see *Chandler* v. *Spear*, 19 Vt. We see nothing to distinguish this action from ordinary suits *ex delicto*, or to require the application of a different rule. The ruling as to damages does not appear to have been objected to.

3. The phrase "grain" as used in the officer's return might include grain in the straw. The words are "all the hay and grain in the barns and in stacks." If there were grain *in the straw* in the barn, we think the plain and ordinary meaning of the words "*all the grain* in the barn" would include such grain, though it might include other grain.

4. Whatever difficulty there may be in determining the extent

Briggs *v.* Taylor.

of an officer's duty in taking care of property attached when in the process of manufacture, we see none whatever in regard to his duty to thresh grain in the straw, when it is necessary to thresh it in order to preserve it. It is an act which every prudent man would do, and about which no prudent man would hesitate. It is the ordinary mode of preserving grain from mice and vermin and other causes of waste ; to omit it is negligence .

5. The charge of the court as to the carriage, wheels, and sled obviously intended to follow the language of the decision of this case in the 28th Vt. The language of the charge does not in express terms meet and fully answer the request of the defendant on this point. It does not say, if the carriage and wheels were of no value except for their irons, and these received no detriment from their exposure to the weather, then the plaintiff can not recover for damage to them. But it says in substance if the *carriage and wheels* were past use and had no value for use or sale the plaintiff can not recover. This would lead the jury to consider whether they were of use and value as *a carriage and wheels* (for the plaintiff's evidence tended to prove they had such use and value ;) and to lead them to understand that if they had not *such* value,—if they were only of value for their irons,—then the plaintiff could not recover. We think the charge, though not as full and explicit as it might have been, and as the request plainly demanded, could not have misled the jury to the injury of the defendant ; but rather led them by implication to that conclusion which on this point the defendant claimed to be correct.

6. The copy of Gleason's deputation, as recorded in the county clerk's office, was admissible. Such record is required by law, Comp. Stat. p. 97, §5 ; and may be proved without proving the loss of the original. So that Gleason acted as a deputy sheriff was admissible to prove that he was such.

7. The fact that the plaintiff often met Gleason and knew how he was keeping the property and did not complain had no tendency to show either that Gleason was not negligent, or that the damage was slight. Mere silence of the party is not evidence against him when nothing is said or done requiring or naturally calling upon him to speak. The plaintiff might well

have been silent, relying on his legal rights and the defendant's responsibility. There was nothing requiring him to complain.

8. The plaintiff claimed damage for injury to the wheat from Gleason's negligence. Gleason denied such injury, and on this trial claimed that the wheat was injured by the weevil. The plaintiff offered to show that on a former trial of this case Gleason, on being examined on this point, said nothing about injury to the wheat by weevil. The evidence offered was clearly admissible as tending to discredit Gleason. It is every day's practice to admit proof to show, that a witness has testified to material facts upon a second trial which he omitted to relate upon the first. Whether the fact tends much or little to discredit the witness must depend upon the circumstances of each case, and the explanations given by the witness.

9. Marshall was the plaintiff's hired man, and had been accustomed to lend farming tools kept on the farm. This would tend to show an authority in him to lend such tools while kept on the farm in the ordinary way. But it would not tend to show any authority to lend such property after it had been attached. By the attachment new relations arise, the condition of the property is changed, and the exercise of such power by the hired man might affect the plaintiff's interests further and differently from what it would if the property was merely in its ordinary condition and use. An authority in the hired man to lend property attached and in the custody of the sheriff can not be inferred from his having exercised such authority before attachment and when the property was in the ordinary use of his employer. There was no error therefore in the ruling of the court, that there was no evidence to show any authority in Marshall to lend the plaintiff's property which was not on the farm.

These we believe are the material points urged by the counsel for the defendant, on the hearing of the case, and as we find no error therein the judgment of the county court is affirmed.