R. B. KENERSON v. NATHANIEL C. BACON.

*Absconding Debtor. Arrest. Capias. Sheriff. Commitment.*

An officer having arrested an absconding debtor upon a *capias,* may lodge him in the county jail for safe keeping until he furnishes bail, or is taken, upon proper request, before the magistrate signing the writ, for examination in discharge of arrest, but his custody remains in the officer, and could not be transferred to the jailer until full commitment upon the writ.

By section 61 of chapter 33 of the General Statutes, a commitment to jail consists of a delivery of the person to the keeper of the jail within the same, and a delivery of an attested copy of the writ, by virtue of which the commitment was made, to the jailer, with the officer's return of commitment.

Until full service of the process by commitment, verified by the officer's return, the debtor's right to be taken, upon proper request, before the magistrate, continues, although the officer may have lodged him in jail and intended what he did to be a commitment; and if the officer neglect or refuse to comply with the request and complete the service in disregard of it, he becomes a trespasser *ab initio.*

ACTION for false imprisonment. The defendant pleaded the general issue, and several special pleas, justifying the imprisonment by virtue of a writ. Trial by jury, September term, 1868, WILSON, J., presiding. The defendant, at the time of the imprisonment, was a deputy sheriff for the county of Washington, and on the 16th day of February, 1864, a writ was placed in his hands, in favor of John P. Dewey of Montpelier, against the plaintiff, returnable to the then next term of the Washington county court. The writ was against the plaintiff's body, and an affidavit had been filed as the law requires.

The plaintiff was married on the morning of said 16th day of February, 1864, and with his wife and others, started on a wedding trip on the evening of the same day, intending to stop over night at Montpelier, where he had previously engaged rooms at the Pavilion House. The train was late, and did not arrive at Montpelier until nearly twelve o'clock at night.

The plaintiff's testimony tended to show that the defendant first spoke to him on the train, and said he had a bill of about $400, in favor of John P. Dewey, and a writ for his arrest in case the bill was not paid; that the plaintiff informed the defendant that he could not pay the bill, but was going to Montpelier to stop that night, and the defendant said that it would be satisfactory, etc.,

and he  saw no more of  the defendant until after their arrival in
Montpelier, when the defendant again appeared and told the
plaintiff that  he must pay the bill or furnish security, $800 or
$1000, or he should have to lock him up; that the plaintiff en-
deavored to furnish security, but could not, that night, satisfactory
to the defendant; that the defendant then took the plaintiff to jail,
W. S. Kenerson going with them; that on arriving at the jail, and
getting the jailer up, the defendant said, " here is a man I want to
put into jail for safe keeping till morning; he is no criminal,
merely for safe keeping;" that they all went into jail together,
and while the jailer was making up a bed, the defendant informed
the plaintiff that he would come down in the morning and take
him out to breakfast; that the plaintiff asked him what time he
would come, and the defendant said about eight o'clock, or as soon
as he got his breakfast.

The plaintiff's testimony further tended to show, that about half-
past eight o'clock the next morning his cousin, W. S. Kenerson,
left the jail and went to breakfast, and that at about nine o'clock
the defendant came and let the plaintiff out, and went to the
Pavilion with him, and left the plaintiff there; that the plaintiff took
breakfast, and then started with another cousin, O. N. Kenerson,
to the office of Redfield & Gleason, where they took advice, and
as they were returning to the hotel were met by the defendant,
who said he was looking for the plaintiff, and the plaintiff replied,
" Here I am;" that the defendant then wanted to know if the
plaintiff was ready to settle that bill; that the plaintiff replied he
was not; the defendant then said he should have to lock the
plaintiff up again; whereupon the plaintiff demanded to be taken
before the authority signing the writ for an examination under the
statute relating to the arrest of the bodies of debtors; that the
defendant said, " Come with me," and the plaintiff, supposing that
was complying with his demand to be taken before the authority,
went with him until they arrived at the jail steps, when the
plaintiff again made the same demand, and the defendant replied
that these things have to be done according to law, and I shall
have to lock you up again, and thereupon did lock the plaintiff
up, and that the plaintiff remained in jail until about eight o'clock

of that evening, when he was discharged upon a jail bond. The testimony of the plaintiff also tended to show, that no copy of the writ was left with the jailor until he was put into jail the last time.

The defendant introduced testimony tending to prove that he arrested the plaintiff on the cars at Waterbury, and went with him to Montpelier to the Pavilion Hotel, and soon after they arrived there the plaintiff asked the defendant what he (plaintiff) could do about the matter, the plaintiff having told the defendant he could not pay the debt or secure it then; that after the plaintiff had failed to pay or secure the debt and failed to procure bail, and declined to make further effort to procure bail that night, the defendant took the plaintiff to the jail (which was situated about fifty rods from said hotel) and told the jailer he (the defendant) wanted to commit the plaintiff to jail, and did commit him; that the defendant did not say to the jailer that he (defendant) wanted to leave or lodge the plaintiff in jail for safe keeping till morning; that he (defendant) did not use the words "final commitment," but told the jailer he (defendant) wanted to commit the plaintiff; that the defendant intended it as a final commitment; that it was late then, being about one o'clock, a cold night, and not convenient to make a copy and return of commitment at the jail-house that night; and that the defendant was unwell, and for these reasons he did not leave with the jailer a copy of said commitment that night, but did leave with the jailer a copy of said commitment with his return thereon about nine o'clock the next morning, February 17. The defendant offered in evidence said copy, to which the plaintiff objected, but it was admitted, to which the plaintiff excepted.

The defendant introduced evidence further tending to prove, that after they arrived at the jail, and the plaintiff was committed, he requested the defendant to come to the jail in the morning and take the plaintiff to the hotel to breakfast; that the defendant went to the jail at about half-past eight o'clock the next morning to take the plaintiff to the hotel to breakfast; that the plaintiff then said he wanted to go to the hotel and take breakfast with his wife, and asked if the defendant would take him there; that he (de-

fendant) then asked the jailer if he (defendant) could take the plaintiff to the hotel to breakfast; that the jailer told the defendant he might take him there for that purpose if the defendant would be responsible to return the plaintiff to jail; that this conversation was in the presence of the plaintiff; that he took the plaintiff out at his request, as aforesaid, by consent of the jailer; that the defendant told the jailer the purpose for which the plaintiff was going out, and that he would return him to the jail after breakfast; that while the plaintiff was taking breakfast at said hotel the defendant left with the jailer a copy of said commitment, it then being about nine o'clock, A. M.; that a few minutes after leaving said copy with the jailer he saw the plaintiff on the street and requested him to return to the jail, and then the plaintiff, for the first time, said he wanted the defendant to take the plaintiff before the authority signing the writ, for examination under the statute relating to the arrest of the bodies of debtors; that the defendant then told the plaintiff that he was committed the night before; that he (defendant) thought he had no right after commitment to take him before said authority, and requested the plaintiff to return to jail, and told the plaintiff he (defendant) had agreed to take the plaintiff back to jail, and that the plaintiff must go back; that the defendant then took the plaintiff back to jail; that the copy of said commitment was left before the plaintiff made any request to be taken before said authority.

The plaintiff requested the court to charge, among other things, as follows:

That a person arrested on mesne process remains in the custody of the officer arresting him until he is either discharged from arrest or committed to the keeper of the jail within the jail, together with the papers, which the law constitutes the only authority or warrant of the jailer for receiving or detaining him.

The jury returned a verdict for the plaintiff to recover one dollar damages. To the refusal of the court to charge, wherein the court failed to comply with the plaintiff's request, and to the charge, the plaintiff excepted.

*H. S. Royce* and *Dewey & Noble*, for the plaintiff.

*H. R. Beardsley* and *Edson & Rand*, for the defendant.

The opinion of the court was delivered by

PROUT, J.    The facts pleaded by the defendant and relied upon
as justifying the arrest and imprisonment of the plaintiff, for
which this action is brought, are substantially, that the defendant
was a deputy sheriff and had for service a writ of attachment and
*capias* against the plaintiff, issued in conformity to law, which he
served by arresting and committing the plaintiff to jail, on his
neglect to give security or bail for his appearance to answer to
the suit thus commenced.    The General Statutes (ch. 33 § 78)
relating to the imprisonment of debtors, in effect provide that
whenever any writ shall issue as an attachment, the defendant in
the process may, at the time of service on his body, notify the
officer that he will appear before the authority issuing it and sub-
mit himself to examination, as to whether he is about to abscond
or remove, and has money or other property secreted.    Upon
notice to the officer and notice to the plaintiff in the process, the
provision is "that he may appear;" and by § 80 of the same
chapter, it is made the duty of the officer to convey the alleged
debtor before the authority designated for examination and hear-
ing, in respect to the facts set forth in the affidavit for *capias*, and
justifying its issue.    Pending this application, the officer has no
right to commit to jail. (§ 80.)    In the section first alluded to, it is
further provided, that if the authority signing the writ shall not
be of opinion that the defendant in the process and under arrest is
about to abscond or remove from the state, and has money or other
property secreted, he shall so certify and discharge the defendant.
These provisions, clear and intelligible, entitled the plaintiff to an
examination with a view to his discharge, provided the requisite
notice was given the defendant for that purpose while in the cus-
tody of the officer and before *commitment*.    It is right here the
material question on this branch of the case arises; the plaintiff
on the evidence claiming that he notified the defendant *before*, and
the defendant that it was *after*, such commitment.    The process
having been delivered the defendant for service, it was his duty,
according to its direction, to arrest the plaintiff, but he was to

37

discharge that duty in view of the plaintiff's right to procure and give bail, or submit himself to examination in discharge of the arrest ; the defendant, however, lawfully, by virtue of the process, retaining the personal custody of the plaintiff, or lodging him in jail for purposes of custody, until discharged ; or, if that should be refused, until a full commitment upon the writ. Until then, the custody of the plaintiff could not be legally transferred from the officer to the jailer. This is evident from § 61 of the chapter cited. By that provision a commitment to jail consists of a de-livery of the person to the keeper of the jail, within the same, and a delivery of an attested copy of the writ, by virtue of which the commitment is made, to the jailer, with the officer's return of commitment. It consists of having done and completed all that which constitutes a full service of the process, verified by the proper return of the officer. These are statute requisites, by which the conduct of the officer is to be regulated, and pointing out his duty ; and unless complied with, the jailer could not hold and detain the plaintiff, except for and in aid of the officer's cus-tody by virtue of the process, and simply as under arrest. This view justified the plaintiff's theory of the case, upon the evidence showing that no copy of the process was left with the jailer until after the defendant was notified of the desired examination, and also by the evidence that he was not at that time actually within the walls of the prison, or, as the statute expresses it, "within the same." If this was the fact, (and it should have been put to the jury,) it was the legal duty of the defendant, notwithstanding what he did was *intended* as a commitment of the plaintiff, to have taken him before the authority signing the writ for examination, refraining from *committing* him on the process until that proceed-ing had been had and determined.

Another question arises in the case, and that is, as to the effect upon the defendant of his neglect or refusal to act upon the plaint-iff's notice or request, assuming it to have been given or made before the service of the writ was completed, and while the plaintiff was in his custody. Until this notice for examination was given, which, as the exceptions show, was on the morning after the plaintiff was lodged in jail, the defendant, so far as ap-

pears from the case, acted in compliance with the law, and was in no way legally delinquent or in fault. But his remaining uncompleted duty in respect to the plaintiff's arrest, his examination for discharge and his commitment to jail, were affected by the statute referred to. The negative part of the section prohibited a commitment until an examination, and its affirmative part, equally explicit, required the defendant to take or convey the plaintiff before the competent authority for that purpose ; in effect, suspending the right of the officer to *commit* to jail until an examination was had, as the statute provides. Assuming the fact to be as the testimony tends to show, the defendant was liable for an unwarrantable commitment of the plaintiff, in consequence of which he was deprived of an admitted right. The *fact* involving this result is, of course, for the jury to find under instructions applicable to this aspect of the case ; and should they find it against the defendant, then he was a trespasser *ab initio*, and must fail in his justification. " To hold that the process is any protection in such a case is an evasion and abuse of the law." 1 Smith's L. C., 166 ; *Bond* v. *Wilder*, 16 Vt., 393 ; *Briggs* v. *Gleason*, 29 Vt., 78 ; *Hall* v. *Ray*, 40 Vt., 576.

As the charge does not embody these views, the judgment of the county court is reversed and cause remanded.