### JAMES WILSON v. R. P. BLAKE.

*Trespass. Tenant in Common. Officer. New Trial. One Tenant in Common can recover only his interest in a chattel sold by Officer. Joint Possession. Estoppel.*

1. In an action of trespass or trover, one tenant in common of personal property, can recover for *only his interest from an officer* who has regularly taken and sold the entire property on execution.
2. When there is error in the charge to the jury, it must be *clear* that it worked *no injury*, or the exception thereto will be sustained.
3. Occupying a *sugar place*, from year to year, only for the purpose of *making sugar*, which place is separated from the home farm by intervening lands owned by others, is not actual or continuous possession.
4. On a sale by one of the tenants in common of property, evidence is admissible to prove that the other tenant acted in such a manner that he, and thereby his creditors, are *estopped* from claiming any interest therein.
5. If an officer sells sap-holders about *one-half mile from the place advertised for sale*, it is irregular, and makes him a trespasser *ab initio*.
6. Simultaneous attachments of the same property give the attaching parties equal interests in it; but it is legal for the officer to sell the *entire property* at the *same time*, and divide the avails equally among the creditors.
7. A new trial will not be granted, when one stands by and suffers a judgment to be rendered against him, on what he *knows to be an erroneous verdict*, and one that would be corrected, if the attention of the court were called to it.

THIS case was tried by the jury, February Term, 1880, RED-FIELD, J., presiding, and verdict for the plaintiff. It was an action of trespass with a count in trover for taking and converting the

plaintiff's personal property. Plea not guilty; and justification under three writs of attachment against one Chas. Wilson, and one writ in favor of Elvira Powers against Chas. and John Wilson. John Wilson, the father of Charles, deeded one equal, undivided half of his farm, including his sugar-place, which was on another lot, to Charles in 1859; and Charles then went into possession thereof; and John and Charles occupied the same, jointly and continuously, down to the making of the attachments, in October, 1878; and the personal property sued for was upon said farm at the time of its attachment.

The plaintiff on trial claimed and introduced evidence, tending to show, that although by the terms of the deed from John Wilson to Charles in 1859, it conveyed to the latter an equal, undivided half of the sugar-place; yet it was never so understood or treated by said John or Charles; but that said John always claimed to be the sole owner of the same, controlling and disposing of the yearly products as the sole owner, with the full knowledge and assent of the said Charles; and that during all the intervening years from 1859, to the date of the deed from John Wilson to the plaintiff, whenever said Charles carried on said sugar-place, he did so under the directions and employment of the said John; and that the said Charles had no possession or occupancy of the same; and that the sugar-place was nearly half a mile distant from the home farm, separated therefrom by the land of an adjoining owner. And it did not appear that said sugar-place had ever been used or occupied for any purpose, except for making sugar from spring to spring.

There was some arrangement between John and Charles in 1859 about the personal property, the defendant claiming that Charles, by virtue of this trade, became then, and always was, the owner of one undivided half of all the personal property on the farm.

The plaintiff claimed, and introduced evidence tending to show, that at or about the date of the deed in 1859, from John to Chas. Wilson, John then being the sole owner of all the personal property on said farm, an arrangement was entered into between John and Charles, by which Charles was to live with John on the farm, and take care of John and his wife while they lived; and when he had so supported and taken care of them during their natural lives,

Charles was then to become the owner of all the personal property, and the remaining undivided half of said home farm; and that Charles's interest in the personal property was dependent wholly upon a full performance of said contract or understanding, and that the relation of the parties respecting the property remained unchanged, as to each other, until Charles was unable to perform the contract, for the support of his father and mother. The said deed was made from John to the plaintiff to secure such support. The plaintiff claimed that, by virtue of his deed, dated October 7, 1878, and recorded October 8, 1878, he was the owner of one undivided one-half of the home farm, and the whole sugar-place, and one undivided half of all the live stock and farming tools thereon, and the sugar-tools.

The court ruled that the deed to Charles conveyed to him one undivided half of the sugar-place. There was no consideration for the deed from John to the plaintiff, except the agreement of the plaintiff to support John, and no writing relating thereto was offered in evidence, except said deed.

The various debts, upon which these several suits and attachments were based, were contracted before the date of the deed from John to the plaintiff. The plaintiff claimed and gave evidence tending to show that after the execution and record of the deed from John Wilson to him, he employed one Kilborn to take care of John, and put him into possession of said premises and personal property, directing him to take care of, and look after the same, and prior to the making of any of the attachments, set up by defendants, by way of justification. The defendant claimed, and gave evidence tending to show, that Kilborn took possession of the property for the plaintiff subsequently to said attachment; and at the time of the attachment the plaintiff had not taken any actual possession of such real estate or personal property, beyond filing his deed for record in the town clerk's office.

John Wilson, for several years before the deed to Charles, and John and Charles during the time from the date of the last-named deed, to the time of said attachments, had carried on and used this sugar-place in connection with, and as a part of, this farm, as is the usual custom of the country. The defendant attached the

whole of the sugar-tools, which were in the sugar-house in the sugar-place, by filing a copy of the writ in the town clerk's office, and sold the same upon the writ and executions against both John and Charles ; and sold them as the sole property of John.   The defendant requested the court to charge that, notwithstanding said deed and record, the said sugar-tools were still liable to attachment on the writ and execution against John Wilson, there having been no actual change of possession ; but the court refused so to charge ; and did charge :   " That Charles owned by the deed one-half of the sugar-place, as well as of the farm, and plaintiff one-half (undivided); and that in a place that was a forest, used only for a sugar-place in the spring, there was no continuous possession—could be none.   If the plaintiff took a deed and put it on record, and actually bought but one-half; if he got the deed on record, so that he became the owner of the land, and gave notice by record to all purchasers, and no one was in actual possession, that his possession by intendment of law, would be to the extent of his ownership, unless they seized those buckets so as to get a legal lien upon them by removal or by levy, (and it seems that nobody did remove them before James's deed was on record on the 8th) then the plaintiff's title, if valid and honest, would be good, to the extent of at least one-half.   Now, if by this warranty deed from John, the plaintiff became the owner of the whole of the sugar-tools, he would recover for all the sugar-tools that were taken and sold."   To which refusal to charge as requested, and to the charges as given, defendant excepted.

The defendant further requested the court to charge that if plaintiff owned but one undivided half, he could not recover at all ; and if he could recover anything, he could only recover one-half the value ; which the court refused to do ; and charged that the rule as to an officer is this :   " That if he does any act to destroy it, or if he sells the whole of it, when he has no right to sell but the debtor's interest therein, that would be a wrong act, as against the owner of the other half.   We think that an officer who proceeds to sell property, should sell only the debtor's interest.   If he sells a larger interest than he had any right to sell, he must be held as a wrongdoer against the owner of the other half."   The

defendant at the same time received two writs; one against John and Charles, and one against Charles alone, upon both of which he attached some pigs, oats and kettles. He also had two executions against them. The proceedings thereon, and the charge of the court as to them, and as to the selling of the sap-holders, calves, cultivators, chains, oats, and rake, is sufficiently stated in the opinion of the court, except that the holders were about one-half mile from the place of sale.

The plaintiff claimed damages on the sugar-place for taking the sugar-tools. This was excluded by the court below; but the jury gave him $18.00 in their verdict, and it was included in the judgment.

The court directed the jury to return a list of the articles and values which made up their verdict, with their verdict.

Prior to rendition of judgment for the plaintiff in this case on the verdict of the jury, the defendant made no motion to set aside said verdict, general or special, as contrary to law or evidence, nor did he interpose any objection whatever to said verdict, or to the rendition of judgment thereon for the plaintiff, at the time said judgment was rendered.

*L. H. Thompson* and *B. F. D. Carpenter*, for the plaintiff.

Charles Wilson is estopped from claiming the sugar-tools, and if so, his creditors are. 30 Vt. 29; 1 Greenl. Ev. (12 ed.) s. 207, *et seq.;* 22 Vt. 17; 28 Vt. 527. The plaintiff by his deed had constructive possession of the sugar-tools. 12 Vt. 653; 33 Vt. 343; 35 Vt. 208; 50 Vt. 116; 13 Vt. 267; 15 Vt. 554; 30 Ib. 323. The plaintiff, having a deed of the sugar-place, and putting Kilborn in possession of the property, had possession himself. 48 Vt. 247; 39 Ib. 584; 46 Vt. 587; 42 Ib. 27; 15 Ib. 393; 30 Ib. 267.

*Jno. Young* and *Edwards & Dickerman*, for defendant.

There was error in the charge, that the plaintiff could recover the full value of the property. *Chandler* v. *Spear*, 22 Vt. 407; *Bloxham* v. *Hubbard*, 5 East. 407; 7 T. R. 279; 6 T. R. 766; Sedgwick Dam. 493. *Briggs* v. *Taylor* cites with approval *Chand-*

*ler* v. *Spear*. See also 24 Vt. 546 ; Greenl. Ev. v. 2, s. 648. There was no change of possession. The possession was joint. *Flanagan* v. *Wood,* 33 Vt. 332 ; 19 Ib. 609 ; 15 Ib. 358 ; 17 Ib. 271 ; 3 Ib. 442. There was no irregularity in the sale. 13 Mass. 529 ; 14 Pick. 414 ; 6 Con. 170 ; Drake Attach. ss. 263, 363.

The opinion of the court was delivered by

Ross, J. It is well settled law in this State that a tenant in common of personal property can only recover in trespass or trover to the extent of his interest in the property against an officer who has regularly attached, levied upon, and sold the entire property as the property of the other tenant in common. *Ladd* v. *Hill,* 4 Vt. 164 ; *Bradley* v. *Arnold,* 16 Vt. 382 ; *White* v. *Morton,* 22 Vt. 17 ; *Chandler* v. *Spear,* 22 Vt. 407, citing *Addison* v. *Overrand,* 6 T. R. 766 ; *Sedgworth* v. *Overrand,* 7 T. R. 279 ; *Bloxham* v. *Hubbard,* 5 East. 407. In *Chandler* v. *Spear,* the judgment was reversed, because the plaintiff was allowed to recover the entire value of the property ; and the court distinguish such an action from an action by one tenant in common to recover possession of the real estate owned in common, against a stranger to the title. This last case has been recognized as the settled law on this subject in *Hubbard* v. *Foster,* 24 Vt. 546 ; and *Briggs* v. *Taylor,* 35 Vt. 66. Hence the County Court was in error when it charged : " that if the plaintiff was a joint owner of one half of the property sued for with Charles, he could recover the whole value, because the defendant as a creditor or an officer of the creditor, would become a trespasser by relation back if he sold it illegally " ; and the defendant's exception thereto was well taken. But it is claimed by the plaintiff that inasmuch as he has recovered only one half the value of the property sued for, as shown by the special verdict, except for the sugar tools, the defendant has not sustained any injury by the error, and for this reason the exception becomes unavailing. It is well settled that an error which this court can clearly see, worked the excepting party no injury, will be unavailing to reverse the judgment. It is not entirely clear that the defendant has suffered no damage by this error. On the statement in the

exceptions we cannot account for the recovery by the plaintiff for one half the horse-rake, two calves, two cultivators and two chains, except on the ground that the jury were misled by this error. It is stated that the plaintiff only claimed to own an undivided half of this property; and that the defendant only sold one undivided half of the same, as the property of Charles; and that his proceedings in making the sale were regular and unquestioned. The undivided half not owned by the plaintiff, was, as the plaintiff's evidence tended to show, owned by John Wilson, and as the defendant's evidence tended to show, the property of Charles Wilson. Whichever the jury found in fact owned it, the plaintiff had no title thereto, and it would seem had no right to recover therefor, unless from this portion of the charge the jury were misled, and obtained the idea that the plaintiff might recover for the half owned by his co-tenant, as well as the half he owned in the common property.

Again : although the court held that the deed of 1859 from John Wilson to Charles, conveyed to the latter one half of the sugar-place, the plaintiff was allowed to show that in fact it was not so understood and treated by the parties thereto; and that from 1859 to 1878, when James took his deed, John had been in possession of the sugar-place, claiming to own it and the sugar tools as against Charles, and that whatever Charles had done in the sugar-place towards carrying it on, he did as the servant and agent of John, and not in the assertion of any right he had acquired under the deed of 1859. If the jury found this to be true, whatever the record of the title might show, John Wilson owned, by adverse possession, the sugar-place and the sugar tools. Conceding that the County Court was correct in holding, as we think it was; (see *Flanagan* v. *Ward*, 33 Vt. 343; *Chandler* v. *Spear*, 22 Vt. 407; and *Paine et al.* v. *Hutchins*, 49 Vt. 314, for a full development of the doctrine of constructive possession,) that the sugar-place being wood-land, and separated from the home farm by land owned by other parties, and used only for a sugar place, was not in the actual, continuous possession of either John or Charles Wilson, at the time James placed his deed of one undivided half thereof on record, and that by that act James obtained

constructive possession thereof, and of the sugar tools, he would only, on his own theory as to the then ownership of the sugar-place and sugar tools, have obtained constructive* possession thereof jointly with John Wilson. On the plaintiff's claim and theory, notwithstanding the deed of 1859 conveyed one half of the sugar-place to Charles, all his right of constructive or actual possession thereto, under said deed had been cut off by the adverse claim to, and use of, the same by John for more than fifteen consecutive years. It was conceded that James had not taken actual possession of the sugar-place, nor of the sugar tools before the defendant attached them as the property of John. So that on this theory of the plaintiff, the sugar-place and sugar tools thereon would be in the joint constructive possession of John Wilson and the plaintiff. The plaintiff claims that he purchased the entire sugar tools of John Wilson. Personal property that is in the joint possession of the vendor and purchaser may be attached and sold by a creditor of the vendor. *Flanagan* v. *Wood*, 33 Vt. 343. But if it should be held that such constructive possession of one undivided half of the sugar-place gave him constructive possession of an undivided half of the sugar tools as against the creditors of John Wilson, which would seem to antagonize the decisions in regard to the rights of a creditor of the vendor to attach personal property in the joint possession of the vendor and purchaser,—he would be entitled to recover only one half the value of the sugar tools; for at most he had constructive possession of them only to the same extent he had constructive possession of the sugar-place. This error would allow the plaintiff to recover the entire value of the sugar tools, although regularly attached and sold by the defendant as the property of John Wilson. We cannot account for the recovery for the entire value of the sugar tools on any other ground than that the jury were misled by the charge that the plaintiff could recover for his co-tenant as well as himself, if the attaching officer sold the entire property on a judgment against, and as the property of, such co-tenant. The whole theory and claim of the plaintiff in regard to the sugar-place and sugar tools was, that if Charles acquired any interest therein by the deed of 1859, he had lost the same, both,

by the adverse use and possession of John Wilson, and by his declarations made at the time the plaintiff took his deed. No doubt by his declarations to the plaintiff, at the time of his purchase, Charles could estop himself from claiming any interest in the sugar-place and sugar tools, and could thereby estop his creditors from taking any interest therein, unless such representations were fraudulently made with a view to bar his creditors' rights to attach the same; and were known by the plaintiff to be thus fraudulently made. Hence the County Court properly received testimony tending to show this. But from its bearing as well as the bearing of the evidence in regard to the adverse use and possession of the sugar-place by John, it is the more evident that the jury may have been misled in the extent of the plaintiff's right of recovery by the erroneous charge already specified. The defendant may, therefore, avail himself of this error. The sale of the holders by the defendant without having them present at the place of sale was such an irregularity as would make him a trespasser *ab initio*. *Evarts* v. *Burgess*, 48 Vt. 205. But as we have seen, it would not give the plaintiff the right to recover the value of the holders unless he had obtained constructive possession of, and had purchased the entire holders.

We also think the County Court was in error in regard to the sale of the pigs, oats, and kettles being irregular and illegal. This property was attached simultaneously on two writs, placed in the defendant's hands at the same time; one against John and Charles Wilson, and the other against Charles Wilson. Judgments were recovered in each suit, and the executions were placed in the hands of the defendant simultaneously. He levied the two executions on the property at the same time, and advertised it for sale on each, at the same time and place. On these facts each plaintiff in the executions was entitled to an equal part of the avails of the sale. Drake Attach. s. 363. In this section it is laid down as established law, and it seems to rest on an equitable as well as a legal basis, that where several attachments are simultaneously placed on the same property, they each take an equal interest therein. The exceptions state that the defendant sold the entire property, and then divided the avails of the sale equally

and applied the same on each execution. It is difficult to discern what there was illegal about such sale. He held two executions on which he was authorized to sell the entire property, and the sale was to be made at the same time and place. Although the entire property had been levied upon on each execution, each was entitled to take but an undivided half thereof. But both executions armed the defendant with full authority to sell the entire property when he did sell it. Not having exceeded the authority of his two processes in making the sale, neither his application of the avails of the sale as the law demanded, nor his failure to state his proceedings properly in his return if he did so fail, would render the sale irregular or illegal. What advantage or what damage any one could receive or suffer by a sale of the entire property, rather than first one undivided half on one execution, and then the other half on the other execution is not pointed out, and is difficult of apprehension. So far as concerned the execution debtor, a sale of the entire property would be likely to avail more, in payment of his debts, than a sale, first of one undivided half, and then the other. Certainly no presumption to the contrary arises. If neither John Wilson nor Charles Wilson owned the property, but the plaintiff did in whole or in part, the sale would be illegal as to him ; but no more so, because the whole was sold together on the joint authority of the two executions, than if made one undivided half on each execution. There may have been more to this sale than appears in the exceptions ; as there stated, we think the County Court was in error in holding the sale irregular and illegal as to the plaintiff, or any one interested in the property, from the manner in which it was made. For these errors, the judgment of the County Court is reversed and the cause remanded. The petition for the new trial is dismissed with costs. A party cannot stand by and suffer a judgment to be entered by the County Court on what he knows to be an erroneous verdict, and not call the attention of the court to the error, nor move to have it set aside, nor corrected, and then be heard to impeach the judgment by a petition for a new trial for errors which he knew existed, and which he might have had corrected by calling the attention of the County Court to them.