## C. J. UFFORD *vs.* CHARLES WINCHESTER.

May Term, 1897.

Present: ROSS, C. J., ROWELL, MUNSON, START and THOMPSON, JJ.

*Lien Holder Giving License to Sell—Sham Sale—Payment of Proceeds.*

The plaintiff, holding a conditional vendor's lien upon a horse, licensed the vendee to dispose of the horse in any way and at any price he might see fit, and give the plaintiff the proceeds. The vendee claimed to have sold the horse to his brother, and the brother sold it to the defendant, who knew the terms of the license. *Held*, that the court was correct in charging that if the claimed sale by the vendee to his brother was a sham trade the defendant, although an innocent purchaser, was liable to the plaintiff in trover; but that the court erred in charging that even if that sale was genuine the defendant was bound to see the proceeds paid to the plaintiff.

As the verdict was general and may have been rendered upon the erroneous instruction the judgment must be reversed.

*White* v. *Langdon*, 30 Vt. 599, distinguished.

TROVER for a horse. Plea, the general issue. Trial by jury at the February Term, 1897, Orleans County, *Taft*, J, presiding. Verdict and judgment for the plaintiff. The defendant excepted.

*N. A. Norton* and *E. A. Cook* for the defendant.

*W. W. Miles* for the plaintiff.

THOMPSON, J. January 9, 1892, the plaintiff sold to one Burton D. Piper, the horse in question, with other property, by a conditional sale, reserving a lien thereon to secure the payment of the purchase price. The lien was duly recorded, and no question was made as to its validity. November 14, 1894, the plaintiff gave said Piper consent in writing to sell this horse, which consent was as follows: "I hereby give B. D. Piper leave to dispose of the Phillips horse on which I have a lien on, in any way he sees fit, and at any price he sees fit, and give me the proceeds, be it more or less."

The evidence of the defendant tended to prove that under this license, Burton D. Piper sold the horse to his brother, Alton J. Piper, and that subsequent to such sale, the defendant, knowing the contents of the license to sell, bought the horse of Alton J. Piper for fifty dollars, giving his note therefor secured by a lien on the horse.

The evidence of the plaintiff tended to prove that the alleged sale to Alton J. Piper, was a sham sale, without consideration, for the purpose of removing plaintiff's lien; and that within two weeks of the alleged purchase by the defendant, the plaintiff demanded of him the amount due on his note given for the horse, and notified him not to pay the note to Piper. The defendant claimed title to the horse by virtue of his purchase thereof from Alton J. Piper.

(1) The defendant excepted to the charge of the court below, to the effect that if the alleged sale to Alton J. Piper was a sham sale, it was no defense to this suit, and the plaintiff was entitled to recover. Was this instruction correct? If it was a sham sale, a sham trade, in law it was no trade, no sale, and no title to the horse passed to Alton J. Piper, by virtue thereof. Under the license from the plaintiff to sell, he could only obtain title to the horse by an actual purchase. If he took him without such purchase, he held him subject to the lien of the plaintiff, and the defendant as his vendee, would hold subject to such lien. If Alton J. Piper induced the defendant to purchase the horse by making fraudulent representations in respect to his title thereto, the defendant has his remedy against him for such fraud, but such fraud does not affect the right of the plaintiff to the horse. The defendant standing upon and defending under the title of Alton J. Piper, the instruction to the jury on this subject was correct. *Thrall* v. *Lathrop*, 30 Vt. 307; *Church* v. *McLeod*, 58 Vt. 541.

(2) The court below instructed the jury, that the defendant, knowing the terms of the consent to the sale, could not defend in this action without showing that the

pay for the horse, when sold by Burton D. Piper, was actually paid to the plaintiff,—that the burden was on him to show this. To this the defendant excepted.

In support of this ruling, the plaintiff relies on *White* v. *Langdon*, 30 Vt. 599. In that case, the license was "to trade off the horse, provided the pay or avails were paid to him, the plaintiff," and consequently only conferred authority to sell, but not to receive the pay for White. The pay was to come directly from the purchaser to him. In the case at bar, the authority to sell and receive the pay, is unlimited. This is the only fair, reasonable construction that can be given to the writing evidencing the license to sell. Burton D. Piper having unlimited authority to sell the horse and receive the pay therefor, the defendant was not bound to show that the pay for the horse was actually paid to the plaintiff, if there was in fact a *bona fide* sale of it to Alton J. Piper. Hence this instruction was erroneous.

The verdict being general, it does not appear whether the jury found for the plaintiff because the alleged sale to Alton J. Piper, was a sham sale, or because the defendant failed to show that the plaintiff received the pay for the horse. For aught that appears, the defendant may have been injured by this instruction, and consequently the judgment must be reversed. *Wilson* v. *Blake*, 53 Vt. 305.

*Judgment reversed and cause remanded.*