COMMERCIAL FINANCE CORPORATION *v.* COMMERCIAL CREDIT
CORPORATION.

May Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed October 3, 1933.

454

*H. William Scott* and *J. Ward Carver* for the plaintiff.

*Theodore E. Hopkins,* and *Francis E. Taylor* (of New York City) of counsel, for the defendant.

THOMPSON, J.   The plaintiff and the defendant are corporations engaged in the business of buying, discounting, and handling commercial paper; the plaintiff at East Montpelier, Vt., and the defendant in Boston, Mass.   At all times material the

Littlefield Piano Company, Inc., hereafter called the Piano Company, was engaged in the business of selling pianos and other musical instruments, with its principal place of business in the city of Barre.

On May 10, 1928, the Piano Company executed a chattel mortgage on twenty-five pianos, described therein by name and number, to the plaintiff to secure the payment of its note of even date for $9,500, payable to the plaintiff or order. On January 28, 1929, it executed another chattel mortgage on ''a quantity of pianos and victrolas,'' described therein by name and number, to the plaintiff to secure the payment of its note of even date for $21,000, payable to the plaintiff or order. When each mortgage was executed, it was agreed by the plaintiff and the Piano Company that the latter might sell the mortgaged property in the ordinary course of business, and receive cash or take notes payable to the Piano Company in payment therefor, the same to be turned over to the plaintiff to be applied upon the mortgage indebtedness.

Thereafter the Piano Company sold some of the mortgaged pianos to *bona fide* purchasers in the ordinary course of business, and in payment therefor took conditional sales contracts, hereafter called lien notes, payable to the Piano Company or bearer. Each note provided that the piano sold and described should remain the property of the Piano Company or bearer until the note was paid. These notes were not recorded.

The Piano Company, for the purpose of obtaining money to finance its business, assigned and delivered a large number of its lien notes to the defendant between March 5, 1929, and October 25, 1929. Several of such notes had been given to the Piano Company by purchasers of mortgaged pianos. The notes were assigned and delivered to the defendant without the actual knowledge or consent of the plaintiff, and the defendant took them without actual knowledge of plaintiff's mortgages.

The plaintiff seeks to recover from the defendant for the conversion of the lien notes given to the Piano Company in payment for the pianos covered by its mortgages. There was a trial by jury. The court directed a verdict for the defendant at the close of the plaintiff's evidence. The plaintiff excepted. There is little, if any, conflicting evidence.

The question raised in this Court is whether the defendant obtained a title to such lien notes that is superior to the title or right of the plaintiff.

The plaintiff contends that the license to the Piano Company to sell the pianos was not an absolute, but a conditional, one; that the fair construction of the license to sell is that the Piano Company could not sell unless it paid the avails of notes it took in payment for mortgaged pianos directly to the plaintiff; that it was a special and limited authority; and it invokes the rule that whoever deals with one having only a special and limited authority is bound at his peril to know the extent of the authority.

This contention is not sound. It is well settled in this jurisdiction that an unconditional express or implied license from a mortgagee to the mortgagor or from a conditional vendor to his vendee to sell the encumbered personalty in the ordinary course of business and to receive the pay therefor, whether it be money or notes, operates, when acted upon, as a release or waiver of the security. *Perry* v. *Dow*, 56 Vt. 569; *Ufford* v. *Winchester*, 69 Vt. 542, 38 Atl. 239; *Hunt* v. *Allen*, 73 Vt. 322, 50 Atl. 1103; *Colston* v. *Bean*, 77 Vt. 40, 58 Atl. 795; *Rogers* v. *Whitney*, 91 Vt. 79, 99 Atl. 419; *Reed* v. *Rowell*, 100 Vt. 41, 43, 134 Atl. 641; *Cloutier* v. *Devereaux*, 100 Vt. 187, 193, 136 Atl. 28; *Manley Brothers Co., Inc.* v. *Somers*, 100 Vt. 292, 296, 137 Atl. 336; *Manley Brothers Co., Inc.* v. *Somers*, 100 Vt. 439, 441, 138 Atl. 735.

While such unconditional license to sell operates, when acted upon, as a release or waiver of the security not only as against *bona fide* purchasers but also as against the seller (*Manley Brothers Co., Inc.* v. *Somers*, 100 Vt. 439, 138 Atl. 735), the license to sell may be subject to a condition that is binding upon the licensee. If the license to sell is upon the condition that the proceeds derived from the sale shall be turned over to the licensor, the condition is binding upon the licensee, and compliance therewith by him is necessary to justify and validate the sale as between him and the licensor. Such a conditional license is unconditional as to *bona fide* purchasers, and operates, when acted upon, as a waiver of the security as against them; but, if the licensee violates the condition, and, without the consent of the licensor, retains the proceeds of the sale, the latter

may maintain an action against him for the conversion of the property sold. *Ufford* v. *Winchester, supra; Reed* v. *Rowell, supra; Cloutier* v. *Devereaux, supra; Manley Brothers Co., Inc.* v. *Somers,* 100 Vt..292, 137 Atl. 336; *White* v. *Langdon,* 30 Vt. 599, relied upon by the plaintiff, is distinguished in *Ufford* v. *Winchester,* where the license to sell the property and to receive the pay therefor was upon the condition that the licensee should turn the proceeds of the sale over to the licensor, and it was held that such a license was unconditional as to *bona fide* purchasers.

The plaintiff also contends that the defendant did not take the lien notes in the regular course of business, in that it took the note of the Piano Company payable in monthly installments; that it left the lien notes with the Piano Company for collection to apply on its note to the defendant; that it took the written personal guaranty of Mr. Littlefield, the treasurer of the Piano Company, and one G. L. Woodworth, to secure the payment of lien notes purchased by it from the Piano Company; and that the defendant did not pay full value for the notes.

The notes were purchased by the Boston office of the defendant. Wallace J. Eckenrode, who was manager of the office at that time and had charge of the transactions with the Piano Company, was a witness called by the plaintiff. While it appears from the record that the defendant took the personal guaranty of Mr. Littlefield and Mr. Woodworth for the payment of the lien notes purchased by it, and a note from the Piano Company payable in installments, it appears from the uncontradicted testimony of Mr. Eckenrode that the notes were purchased by the defendant in the regular course of business; that all of its transactions with the Piano Company whereby the title to the notes and the property described therein was transferred to it, were done in the regular course of business; that the notes were purchased "for one hundred cents on the dollar"; that eighty per cent of the purchase price was paid to the Piano Company when the notes were transferred to the defendant, with the agreement that the remaining twenty per cent would be paid when all the notes were paid. No evidence has been called to our attention from which it can be inferred that the notes were not taken in the regular course of business or that the defendant did not give a valuable consideration for

them. While the Piano Company agreed to collect the installments due on the notes and remit them to the defendant, there is no evidence that the defendant left the notes with the Piano Company or that the latter had possession of them after they were delivered to the defendant.

The plaintiff contends further that its chattel mortgages, being recorded, were constructive notice to the world that there was a lien on the pianos described therein; that when the defendant took the lien notes describing the same pianos by number and name as were described in the mortgages without inquiry, it took them with notice of the lien of the mortgages; that, since it took not only the notes but also the lien contained in them, it was charged by statute with constructive notice of the record title, which showed that the Piano Company had no title to the lien notes, that under such circumstances the defendant was not a purchaser without notice, but a purchaser with constructive notice that its vendor did not have a legal title to the notes sold to it.

In the view we take of the case, the question of constructive notice is not involved. It is true, that, as a rule, the seller of personalty cannot confer upon a purchaser any better title than he himself has. There are many exceptions to this rule, however. The rule that an unconditional license to sell mortgaged personalty operates, when acted upon, as a waiver of the mortgage so far as the purchaser is concerned, is one of the exceptions to the general rule.

The plaintiff claims title to the lien notes in question only by virtue of the lien of its mortgages. As we have hereinbefore said the license from the plaintiff to sell the mortgaged pianos in the ordinary course of business was unconditional as against the purchasers thereof, and it operated, when acted upon, as a waiver of the mortgages on such pianos. It also operated as a waiver of the mortgages as to the lien notes taken by the Piano Company in its own name in payment for such pianos, because, when the mortgages on the pianos were waived, there was no lien left upon which the plaintiff could base a title to the lien notes or to a right of possession as against *bona fide* purchasers of such notes.

The plaintiff had an action against the Piano Company for the tortious conversion of the pianos it sold, by reason of its

breach of the condition that it should turn the proceeds derived from the sales over to the plaintiff, but that cannot affect the rights of a *bona fide* purchaser of the lien notes taken in payment for such pianos.

That the defendant is a *bona fide* purchaser cannot be questioned. It appears from the record that it purchased the lien notes in good faith, in the usual course of business, and for a valuable consideration.

The court below committed no error when it directed a verdict for the defendant.

*Judgment affirmed.*