JULIAN H. MURPHY *v.* ALLEN H. BRITTON.

May Term, 1938.

Present: MOULTON, SHERBURNE, BUTTLES and STURTEVANT, JJ., and JEFFORDS, Supr. J.

Opinion filed October 4, 1938.

*S. H. Crosby* for the plaintiff.

*Raymond Trainor* for the defendant.

SHERBURNE, J.  This is an action for the conversion of five cows and three heifers.  Trial was by court, judgment was for the defendant, and the plaintiff comes here upon exceptions.

On April 9, 1936, the plaintiff and his wife leased their farm in Hartland, together with certain personal property, including fifteen cows, seventeen yearlings and three two-year-old heifers, to Albert Roy and Antoinette Hebert for the term of five years, beginning June 1, 1936, at an annual rental payable in monthly instalments to be taken out of the milk checks.  The lease was duly recorded in the Hartland land records.  Among other things it contained the following provisions:  ''Such stock or its equivalent to be kept upon the place''; ''It is agreed that at the expiration of this lease the said Albert Roy and Antoinette Hebert shall leave on the farm the same amount and number of cattle and horses of approximately the same quality and ages as the ones described in this lease''; ''To have and to hold the aforesaid premises and personal property * * * to the said Albert Roy and Antoinette Hebert * * * for and during the term of five years next ensuing.''  And the lessors agreed to pay the taxes on the premises and personal property leased, and the fire insurance assessments on the buildings and contents, and the lessees further agreed to ''keep and leave the equivalent of the livestock as before mentioned.''

The lessees took possession of the livestock on June 1, 1936, and soon thereafter the plaintiff took Roy to the farm of the defendant, located about two and one-half miles away, and introduced him to the defendant, who was and is a farmer and

cattle dealer. At that time the plaintiff told the defendant that Roy wanted to purchase some cows, and that later Roy might have some he wanted to turn. This resulted in the purchase of four cows by Roy of the defendant, which were paid for by giving a chattel mortgage for the purchase price to the defendant. These cows were delivered to Roy before the plaintiff left the farm.

On July 22, 1936, the plaintiff took his family to California, and did not return until May 24, 1937. After the plaintiff had gone, the defendant sold cows to Roy at various times, taking a chattel mortgage for the purchase price each time; and finally on December 26, 1936, the defendant took a chattel mortgage on thirteen cows which Roy had purchased from him and then had to secure the balance of $698 then owing to the defendant. In August, 1936, the defendant purchased a cow and three heifers from Roy for $150, and gave him credit on the amount then owing to the defendant; and on September 14, 1936, the defendant purchased four cows from Roy for $275, and as part payment credited Roy with $226 on Roy's indebtedness to him. Previous to the purchase of September 14, 1936, the defendant had looked up Roy's lease with the plaintiff, and, in purchasing cattle from Roy, took into consideration both the terms of the lease and the talk he had had with the plaintiff when Roy was introduced to him.

When the plaintiff returned on May 24, 1937, Roy had abandoned the farm, and only two of the original cows were on the farm. Thirteen of the cows which the defendant had sold Roy were then on the farm, but later they were sold for the defendant at a foreclosure sale without objection from the plaintiff.

Among other things the findings state:

> "The plaintiff testified, and we find, that if Roy had left the same number of cattle on the farm as the plaintiff leased Roy, it would have been all right with the plaintiff."
>
> "Under the terms of the lease and the plaintiff's oral testimony, we find that Roy had the right to sell to the defendant the cattle which the defendant purchased from Roy, and that the de-

fendant is not guilty of converting the cattle here in suit.''

■ To these last two findings the plaintiff excepted upon the grounds that they are contrary to the law and evidence, but his brief, although it points out much of the evidence, does not show that there was no evidence to support these findings. Hence we only consider the conclusions of law and the exception to the judgment.

■ ■ We have here a lease in its proper sense of the land and a bailment or sale of the cattle, but it is unnecessary to determine which. If a sale, the absolute property in the cattle passed to the lessees and they had a right to deal with the defendant as they did. Should we hold that there was a bailment of the cattle, as claimed by the plaintiff, it would make no difference in the result, as it is very evident that it was contemplated that the lessees should have the privilege of making sales from the stock and returning others of approximately the same quality and ages. If there is any doubt about the meaning of the contract, it is removed by the remark made by the plaintiff to ,the defendant in the presence of Roy that later Roy might have some cows that he wanted to turn. This is so under the well-settled rule that in determining the meaning of an indefinite or ambiguous contract, the construction placed upon it by the parties may be considered by the court. *Cray* v. *Bellows Falls Ice Co.*, 108 Vt. 190, 194, 184 Atl. 695; *Douglass & Varnum* v. *Village of Morrisville,* 89 Vt. 393, 471, 95 Atl. 810; *Kopper* v. *Fulton,* 71 Vt. 211, 44 Atl. 92; *White* v. *Amsden,* 67 Vt. 1, 30 Atl. 972; *Vermont & Canada R. R. Co.* v. *Vermont Central R. R. Co.,* 34 Vt. 1; *Barker* v. *Troy & Rutland R. R. Co.,* 27 Vt. 766. The effect of the lease and of the remark of the plaintiff, construed together, was to give Roy a license to sell to the defendant, and the plaintiff cannot recover of the defendant if the sale was made pursuant thereto. *Prouty* v. *Nichols,* 82 Vt. 181, 72 Atl. 988, 137 A. S. R. 996; *Rogers* v. *Whitney,* 91 Vt. 79, 99 Atl. 419; *Martin* v. *Martin,* 98 Vt. 326, 127 Atl. 292, 55 A. L. R. 697; *Reed* v. *Rowell,* 100 Vt. 41, 134 Atl. 641; *Cloutier* v. *Devereaux,* 100 Vt. 187, 192, 136 Atl. 28; *Manley Bros. Co., Inc.* v. *Somers,* 100 Vt. 439, 138 Atl. 735; *Commercial Fin. Corp.* v. *Commercial Credit Corp.,* 105 Vt. 453, 457, 168 Atl. 257.

It is also apparent that the plaintiff understood that Roy had a right to sell the cattle. When Roy wrote him on Sepember 14, 1936, that he had sold some cows to the defendant, the plaintiff never notified the defendant that he had no right to buy from Roy, and so far as appears never made any objection to Roy. Had he not so understood, he would naturally have made prompt objection.

Whatever may have been the liability of Roy in failing to replace the cattle he had sold, we do not think that the defendant was under any duty in that regard. The lease does not say that the lessees can only exchange or swap cattle, nor do we consider the word "turn" as used by the plaintiff to have that limited meaning. Roy was under a duty to replace any cattle sold with others free and clear of encumbrance, but he was not restricted to a swap, he could sell in one place and buy in another. The authority of Roy to sell to the defendant was unlimited. See *Ufford* v. *Winchester*, 69 Vt. 542, 38 Atl. 239.

*Judgment affirmed.*